428

## Levi A. Huffman, Appellant, v. William E. Gould, Appellee.

### Gen. No. 10,049.

October term, 1945. Heard in this court at the Opinion filed December 13, 1945. Opinion modified and rehearing denied February 6, 1946. Released for publication February 6, 1946.

F. B. BRIAN and HARRY C. HEYL, both of Peoria, and J. E. RICHARDS, of Toulon, for appellant.

ANDREWS & ANDREWS and YOUNG & YOUNG, all of Kewanee, and JOSEPH L. SHAW, of Geneseo, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

The appellant, Levi A. Huffman, filed his complaint July 20, 1939, consisting of two counts, against appellee, William E. Gould, for damages. Motions for di-

rected verdict at the close of plaintiff's evidence and at the close of all the evidence in the trial below, were denied. The jury returned a verdict in the sum of $14,700, and returned two special findings of malice. Motion by defendant for a new trial was denied, and a motion for judgment notwithstanding the verdict was allowed and judgment was rendered in favor of the defendant appellee and against the plaintiff appellant in bar of action and for costs. From this judgment, plaintiff has appealed to this court.

The first count of the amended third complaint charged wrongful release of a trust deed by appellee as successor in trust. It recited that a trust deed to a certain 54 acres of farm land was executed by one Joseph Leistner to secure payment of five certain notes, each in the amount of $500, and that the land was sold and conveyed to plaintiff. It recited that at the time of the purchase, plaintiff was required to make payment of the balance of the purchase price amounting to $3,750 to the bank of which appellee was an officer, because the bank was the owner of the notes. This count recited the duty of the trustee not to release the trust deed without payment or cancellation of the notes, and averred that the trustee wrongfully and fraudulently released the trust deed without paying the money received by him to the then holders of the notes and without having same cancelled. It recited that Richard Naseef was then the holder and owner of the notes, and that after the same became due he foreclosed the trust deed and then acquired title to and obtained possession of said lands. The count further recited that after the foreclosure suit had been instituted that the defendant verbally assured plaintiff that the notes had been paid; that it was a misunderstanding between the trustee and Naseef which the trustee would straighten out; that the foreclosure suit would be dismissed; that plaintiff would not be injured; that he should spend no further money for attorney fees

and that he should not bother further about the foreclosure suit. It alleged that plaintiff believed that the release was valid and relied upon said statements, assurances and promises of the defendant; that the release was fraudulent and void; and that as the result of the wrongful acts of the defendant in releasing the trust deed, the plaintiff lost the farm, all improvements he had placed upon same and $3,750 he had paid defendant on the purchase price, and also two houses and lots which he had deeded to Leistner as part of the original purchase price.

The second count realleged most of the foregoing allegations, and further charged that defendant did maliciously, fraudulently, unlawfully and wrongfully release the trust deed for his own use and benefit; that he maliciously, fraudulently, unlawfully and wrongfully appropriated said payments of money without the knowledge of plaintiff or Naseef; and that as the proximate result of the wrongful acts of defendant, plaintiff suffered the loss aforesaid.

The answer admitted a few of the allegations, averred the lack of knowledge of some, and denied others. It set up the five year statute of limitations as a defense, and alleged that defendant had become a bankrupt and was discharged of liability by bankruptcy. Plaintiff replied that the statute of limitations was not a defense, nor was bankruptcy.

The record discloses the following set of facts which in the main are undisputed. William E. Gould, Samuel D. Burge and John Fischer, the original trustee, were partners engaged in trafficking in money and each were officers of their bank, the Savings Bank of Kewanee which expired on September 16, 1927.

In the spring of 1926, plaintiff was grading on the public highway that passed in front of a 54 acre tract of land owned by Joseph Leistner. He learned that this land was for sale and inquired of Leistner the price he was asking. He was told by Leistner that he

would have to see William E. Gould to whom he had relinquished all rights in the land. Soon thereafter Gould called upon the plaintiff at his home and after a course of bargaining, plaintiff purchased the little farm. He agreed to pay $3,750, his two houses, and shop, all of which had a trading value of $6,000. On May 19, 1926, plaintiff received a deed from Leistner, which deed was acknowledged by Samuel Burge, a notary public. Plaintiff made a down payment of $600 by indorsing over to Gould a certificate of deposit in that sum. Gould agreed to furnish plaintiff an abstract showing merchantable title. An abstract was prepared which the abstractor certified was to the bank.

Prior to the above negotiations between the parties to this litigation, to-wit: July 6, 1925, Joseph Leistner and Carrie Leistner, his wife, executed a deed of trust to the farm in question to John Fischer, trustee, to secure the payment of seven promissory notes in the sum of $500 each, all payable at the Savings Bank of Kewanee. This instrument which was notarized by Samuel Burge, provided for the appointment of William E. Gould as successor to Fischer in the event of disqualification or death. Fischer afterward died on August 11, 1926. This trust deed was released by Gould on April 4, 1927 in which the acknowledgment by defendant as successor in trust was taken by Samuel Burge.

Gould delivered the abstract to Huffman who showed it to several laymen who told him it showed merchantable title. Gould was then given plaintiff's check for $3,150 which he cashed. Plaintiff also offered to prove that Leistner had deeded to Gould the $6,000 worth of real estate that had been conveyed to Leistner by plaintiff as part of the purchase price for the farm. We think the court erred in refusing to admit the proffered proof. *Vigus v. O'Bannon*, 118 Ill. 334, 347.

It transpired that Richard Naseef became the owner of five of the notes secured by the trust deed, he having

paid the bank $2,500 for the same. It also appears that Gould or the bank paid Naseef some interest on these notes up to the time the bank closed. It further appears that Gould released the trust deed of record without the knowledge or authority of Naseef and without paying him anything on the principal. Consequently, Naseef on January 28, 1928 filed suit in the circuit court of Henry county seeking to set aside the release of the trust deed and to foreclose the same. In this suit a decree was not entered until December 18, 1937 or nine years and eleven months after it was entered. Gould and Huffman were both made parties defendant to the proceeding.

On December 29, 1930, a decree *pro confesso* was entered against Gould and the cause was referred to the master in chancery. After several hearings a decree was entered granting Naseef all relief sought in his complaint. The master's deed to him was dated June 17, 1938. Through a writ of assistance, Huffman was dispossessed of his farm on September 18, 1938.

Paragraph 7 of the decree entered in this proceeding recited, "The court further finds that after the closing of said Savings Bank of Kewanee and in the fall of the year of 1927, when the complainant herein applied to the defendant William E. Gould to know why he had released the trust deed before the complainant's notes had been paid, that the said Gould thereupon tendered to complainant for security for said notes, five other notes signed by one George B. Cristie, but complainant finding that they are worthless offers to return them to Gould."

Evidence was taken before the master in chancery on December 8, 1931, January 8 and 18, 1932. These hearings revealed to the plaintiff for the first time that Naseef was the owner of the notes and that they had not been paid. Plaintiff with his son Carl Levi Huffman then went to see Gould to ascertain what was wrong, and Gould said in effect—Never mind, my

friend. There is some misunderstanding here. It will all be straightened out. You have nothing to worry about. Don't bother about hiring a lawyer. Save your money. Go home and forget about it.—Gould told plaintiff in the same conversation that he had a great many financial losses and several lawsuits on his hands, and he had just completely overlooked this little item. After receiving these assurances, plaintiff went back to his farm and made substantial improvements on it. He built a cow barn, 40 by 20, installed a furnace and toilet in the home, and built a machine shed, 24 by 36.

Gould did not testify, in fact, he did not even appear at the trial. He relied then and here principally upon the defense that Huffman knew all the facts giving rise to his supposed cause of action in 1931, and not having instituted suit within five years, it is barred by the statute of limitations. It is argued in effect by Gould that the plaintiff, a confiding old man, should not have been so careless, gullible and trusting; that he should have known better than to continue reposing confidence in him.

To persuade a jury to swallow this defense was indeed a robust undertaking. The record clearly indicates that Gould was guilty of every charge made against him. That he was a cheat, a rascal, and a base scoundrel bent upon defrauding the unsuspecting, there is no dispute.

On behalf of appellee, there were two witnesses, the master in chancery and his reporter at the foreclosure proceedings. Their testimony concerned only the impeachment of plaintiff concerning a part of his testimony given at the foreclosure suit. Their testimony was that the plaintiff there stated that he had taken the money and left it at the bank for Leistner until the title was furnished. On cross-examination, the master admitted that appellant had also there stated that he had paid the balance of the money to Gould the next spring, ahead of time, that he had put it up in Mr.

Gould's bank to stay there until they gave him a good title. On rebuttal, appellant testified that if he ever had said that he put $3,750 in the Savings Bank, he had made a mistake; that he had put the money in the First National Bank, and had given a check for it to Gould, and that Gould had cashed the check.

The position of a trustee in a deed of trust, is one demanding honesty and fairness and competency. For such qualifications, he is selected by the parties. He is agreed upon as trustee by both debtor and creditor and becomes equally trustee for both. Such trustee is appointed by the debtor, derives all of his powers from him and he is trustee for the debtor. The relation imposes the duty of acting fairly, honestly and for the best interest of all parties. He must act with the utmost good faith with all parties having an interest in the property or fund and he must use all reasonable efforts to protect their interest. The foregoing rules were announced by the Supreme Court in the case of *Ventres v. Cobb*, 105 Ill. 33, 38, 39. The same principles were expressed in *Wright v. Chandler*, 180 Ill. App. 476, 478, 479. The trustee in a trust deed is agent of both parties, and if he is guilty of a breach of trust he is responsible to the party injured, and he is not justified in releasing any security unless it be to the advantage of *cestui que trust*, and in so doing, the injured party may proceed against him in a court of law. *Wertheimer v. Glanz*, 277 Ill. App. 389, 392; *Central Trust Co. of Illinois v. Owsley*, 188 Ill. App. 505, 522.

Defendant, as such trustee, owed the duty of acting fairly to Joseph Leistner, the debtor, and the same duty to Levi A. Huffman, appellant, who had derived title from Joseph Leistner. *White v. Macqueen*, 360 Ill. 236, 247, 248. The conduct of the trustee must be absolutely impartial between the parties he represents. *Williamson v. Stone*, 128 Ill. 129, 132; *Gray v. Robertson*, 174 Ill. 242, 250.

Appellant had the right to rely upon the implications of the actions of appellee that the release of the trust deed insured merchantable title in the lands; upon the truth of the statements that the Naseef notes had actually been paid; and upon the assurance that plaintiff would not be injured by the foreclosure proceeding and that he might safely go home and forget it. A relation of trust and confidence existed between appellant and appellee, and appellee was bound to pay over to Naseef the money received and mere concealment of such fact of collection as being for Naseef and not for the bank, could by a jury be found to amount to concealment. *Vigus v. O'Bannon,* 118 Ill. 334, 343-345. When one occupies such a position as appellee in this case, concealment weighs heavily against laches and estoppel. *Pure Oil Co. v. Byrnes,* 388 Ill. 26, 41.

If a cause of action was fraudulently concealed, the time of the running of the statute of limitations is tolled by section 23 of the statute of limitations. Before this statute was enacted it was held that a plaintiff in a suit at law might reply fraudulent concealment to a plea of statute of limitations. *Beatty v. Nickerson,* 73 Ill. 605; *Campbell v. Vining,* 23 Ill. 473.

In this case the original basis of the action was fraud. The jury found malice by its answer to the two special interrogatories, namely, as to whether Gould was actuated by malice in executing the release of the deed, and as to delivery of the abstract showing release of the trust deed. In such case of fraud, affirmative acts or representations designed to prevent, and which do prevent discovery of the cause of action, is answer to the statute of limitations. *Fortune v. English,* 226 Ill. 262, 267.

We are constrained to believe from the evidence, that appellee Gould was guilty of intentional and deliberate fraud when he wrongfully released the trust deed and when he deceived appellee by delivering to him an abstract showing the 54 acres to be free and

clear of any encumbrance, and when he persuaded appellant to abandon his defense in the foreclosure proceeding.

The actions of appellant in placing valuable improvements upon his farm; in refraining from employing attorneys; in leaving the handling of the foreclosure suit to the defendant, all pursuant to Gould's false assurances, certainly shows confidence in and reliance upon the statements of appellee as being true. The consequences of concealment cannot be escaped by the contention such as appellee makes in this case, that appellant could have discovered the fraud of concealment had he exercised reasonable diligence. *Kehl v. Abram,* 210 Ill. 218, 224; *Linington v. Strong,* 107 Ill. 295. Whether appellant acted as an ordinary man was required to act, or whether he was negligent to the extent that he is barred from claiming fraudulent concealment of the cause of action, was a matter peculiarly for the jury to determine.

The act of defendant purporting to give a release that constituted a merchantable title was an affirmative act. The statements that the notes had been paid and that there was a mistake, were likewise affirmative statements and representations of fact. The statements that the foreclosure suit would be cared for and no injury would accrue to appellant were fraudulent representations. The existence of a fiduciary relation between appellant and appellee under this trust deed based on the series of occurrences and circumstances in this case made it the duty of appellee to advise appellant that the notes were owned by another; that they were not paid and that the lien was not extinguished by the release. *Keithley v. Mutual Life Ins. Co.,* 271 Ill. 584, 594, 595.

Appellee, in support of his contention that appellant was negligent in not discovering the true facts, cites cases of negligence in personal injury cases, and cases in regard to failure to examine records and dis-

438

cover that representations made were false. When one has been guilty of material fraud by which, to his knowledge, the other is misled and influenced in his actions, the guilty party cannot cry negligence as against his own deliberate fraud. *Linington v. Strong,* 107 Ill. 295, 302; *Kehl v. Abram, supra.* It is a question for the jury whether one has exercised due care or not; whether he should have examined records under the circumstances in a given case where an innocent third party's rights are not involved; and whether he should seek further information to unearth the fraud of another.

 It is contended that when the released deed was delivered the duties of appellee ended. We cannot accede to that claim. A trust may be disavowed and then reacknowledged. *Horne v. Ingraham,* 125 Ill. 198, 222, 223. Such a trustee has a duty not only to release a trust deed upon payment, but also to pay the money over to the owner of the notes secured thereby, and to see that the notes are cancelled in order to make his purported release a genuine release of the lien. Such a duty is owning to the debtor. Therefore, when a release is given only part of a trustee's duties is performed. The other duties mentioned were just as essential. We do not think the delivery of a release terminated the trust obligation to plaintiff. It is a general rule that in case of a direct trust, however created, no lapse of time is a bar until its determination or until it is openly disavowed by the trustee who insists upon an adverse right or interest. *The Chicago & E. I. R. Co. v. Hay,* 119 Ill. 493, 502; *Maher v. Aldrich,* 205 Ill. 242, 255. The same rule applies to a resulting trust. *Finn v. Wetmore,* 212 Ill. App. 550, 554. Exercising power over the property is an acceptance of the trust. 26 Ruling Case Law, Trusts, section 28. In the instant case there has been no disavowal of the trust. The actions, averments, statements and assurances above mentioned were a

continued recognition by the appellee of his duties to appellant as trustee.

When there are any facts or circumstances in evidence on the question of a new promise or whether there was a fraudulent concealment of the cause of action taking a case out of the statute of limitations, the determination of that matter is a question for the jury to pass upon. *Albretch v. Wolf*, 58 Ill. 186, 191; *Miller v. Cinnamon*, 168 Ill. 447, 478; *O'Hara v. Murphy*, 196 Ill. 599, 602.

The defendant Gould tendered his twenty second instruction, which the court gave to the jury. This instruction recited that such knowledge learned from Naseef in 1932, outlawed the present action unless the jury should find that "the defendant Gould made some false statement or representation to cause the plaintiff Huffman to delay his action." Under the record in this case it could hardly be denied that the representations to appellant above mentioned made after the hearings had been had in the foreclosure suit were false, and that these representations, promises, and assurances did "cause the plaintiff Huffman to delay his action."

A motion for judgment *non obstante veredicto* involves a question whether there is evidence, which, considered with all reasonable intendments supports, or tends to support the verdict. The facts must not only be not in dispute; but it must appear that all reasonable men would draw the same inference from undisputed facts, otherwise, the judgment should not be entered. *Berg v. New York Cent. R. Co.*, 391 Ill. 52, 58, 64. We are of the opinion that the evidence and law sustains the jury's verdict, and that judgment should have been entered thereon. Having considered all the assignments of error, we are of the opinion that appellee is not entitled to a new trial.

The order of the circuit court denying the motion for a new trial by defendant is affirmed. The judg-

440

ment of the circuit court is hereby reversed, and this cause is remanded to the circuit court with directions to vacate and set aside the judgment notwithstanding the verdict of the jury, to deny motion of defendant for judgment notwithstanding the verdict, and to enter judgment upon the verdict of the jury for the amount thereof and costs against the defendant and in favor of the plaintiff, and with proper recitation and finding that malice was the gist of the action.

*Reversed and remanded with directions.*