CRAWFORD COUNTY STATE BANK, as Guardian of the Estate of Bonita Forthenberry, a Minor, Plaintiff-Appellee, v. NORAH GRADY, as Ex'r of the Estate of W. F. Grady, Deceased, Defendant and Third-Party Plaintiff (Lakeview Medical Center, Defendant-Appellant; James Forthenberry *et al.*, Third-Party Defendants).

Fourth District   No. 4—87—0012

Opinion filed September 29, 1987.

Snyder, Meeker & O'Shaughnessy, of Danville, for appellant.

M. John Hefner, Jr., of Harlan Heller, Ltd., of Mattoon, for appellee.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

At 9:49 a.m. on February 26, 1979, Bonita Forthenberry, a four-month-old child, was presented by her parents at the emergency room of Lakeview Medical Center in Danville, Illinois. The child was diagnosed as having viral gastroenteritis and suffering from dehydration and acidosis. Efforts were made to locate the family pediatrician, Dr.

W. F. Grady. In the meantime, an emergency-room physician ordered blood tests, and an aspirin suppository was administered.

Upon Dr. Grady's arrival, following his examination and further testing, he attempted to initiate intravenous therapy in an effort to reverse the dehydration being experienced by the child. The initial effort was in the form of a cut-down procedure in the right saphenous vein, in the area of the right ankle, but the effort was unsuccessful. Dr. Grady then initiated IV therapy in the right femoral area. The right leg was restrained and immobilized as part of the therapy.

Beginning in the evening of February 26, various signs were noted and charted relative to the child's condition, such as swelling, hardness of the hip and leg, the leg's being cold to the touch, and color changes. The IV therapy was ended on February 28, 1979. Hospital records indicate that heat was applied to Bonita's leg at various times while Bonita was a patient at Lakeview.

Problems continued with Bonita Forthenberry's right leg and foot. Gangrene was indicated in the right foot as of March 1, 1979. On March 7, 1979, Bonita Forthenberry was transferred to Riley Children's Hospital in Indianapolis, Indiana, where, a few days later, her right foot was amputated.

On January 21, 1983, this action was brought by Crawford County State Bank, as guardian of the estate of Bonita Forthenberry, to recover damages occasioned by the alleged negligence of defendant, Dr. W. F. Grady, in regard to his medical care and treatment of Bonita Forthenberry. Subsequently, plaintiff was granted leave to amend its complaint, and Lakeview was added as a party defendant. On August 18, 1986, a jury trial commenced in this action. On August 28, 1986, the jury rendered a verdict of $1,214,548.55 for the plaintiff and against both defendants, upon which the court entered the judgment from which this appeal by Lakeview is taken.

The first arguments raised by Lakeview on appeal relate to the testimony of expert witnesses by the plaintiff which Lakeview contends violated an order *in limine* and Supreme Court Rule 220 (107 Ill. 2d R. 220).

Dr. John Herbst was called by the plaintiff as a physician expert in this case. In early May 1986, Dr. Herbst compiled a medical report regarding the treatment Bonita received during her stay at Lakeview, a copy of which was sent to Lakeview. On May 29, 1986, the deposition of Dr. Herbst was taken in Shreveport, Louisiana.

Prior to trial, defendant filed a motion *in limine* as to the testimony of Dr. Herbst. Among other things, the motion asked that Dr. Herbst be precluded from testifying to the following:

"Any opinions or conclusions relating to or pertaining to criticisms of Defendant, Lakeview Medical Center other than application of hot moist packs for the reason at his deposition, Dr. Herbst offered criticisms of Lakeview Medical Center only to the extent of the application of the hot moist packs and had no other criticism."

In his written medical report, Dr. Herbst stated the following:

"By 12:30 a.m. on February 27, both buttock and thigh were noted to be swollen on Nurses' notes. Dr. Grady was called at 12:25 a.m. and given lab results. If he was not informed of swelling, it would have been a breach of standards of care. In a similar way the foot became cold during the night. Despite documenting a serious problem nothing was done to prevent further problems or treat the serious problem now more fully manifested."

Only selected excerpts from Dr. Herbst's depositions are included in the record. Consequently, it is impossible to definitively determine precisely what questions regarding Lakeview and the nursing staff were asked of Dr. Herbst during the deposition. When the attorney for Lakeview was questioning Dr. Herbst, the following colloquy transpired:

"Q. Now, do you have any other criticisms of—
A. No.
Q. —Lakeview."

From the form of the foregoing question, which was asked of Dr. Herbst by Lakeview's attorney, we can assume that Dr. Herbst had expressed at least one criticism of Lakeview's treatment of Bonita. However, it is impossible for this court to determine the nature and extent of this criticism based on the record presented for review.

During the argument on the motion *in limine*, the following colloquy transpired:

"MR. BERNTHAL: There is one more motion in limine that is with respect to Dr. Herbst. The first part of this motion in limine pertaining to Dr. Herbst is similar to the first part of de Meneses motion. We are asking he be barred from offering previously undisclosed criticisms. *** The fourth part as to, I think, if I may borrow my motion a second, sort of more of a refinement of part 1 in the sense of limiting his criticism to the application of the hot packs, because in his deposition he testified, 'In general ***'—I have this page attached—'*** the hospital acted very reasonably.' But he was definite in his criticisms regarding the hot packs and in a series of questions set

forth there. I asked him if there are any other criticisms and he indicated no. So this is a refinement of greater specificity than item 1 of not having him come up with new areas of criticism here at the trial.

MR. HEFNER: My response, with respect to new opinions and new areas, which were inquired into and answers were provided, is if he had opinions that weren't inquired into, issues were in the case at the time of the deposition was taken, I don't think he is barred from that, but so I think I would live with the Court's previous order in all these matters.

* * *

MR. HEFNER: In e, any opinions or conclusions related to or pertaining to any criticism of defendant other than application of hot moist packs, I have not committed his deposition to memory by any means, but I don't know that he was asked, for instance, whether the nurse's failure to contact Dr. Grady constituted a delay. I don't recall what all of his testimony was. I don't think we would ask him anything on that which would be directly contrary to what he testified to in the deposition.

THE COURT: Okay. I think we can show the motion allowed then. Okay."

A docket entry dated the same day as the argument on the motion *in limine* states as follows:

"Cause called to hearing on Motion in Limine filed by Defendant Lakeview Medical Center 8-12-86. Arguments of counsel heard. Motion in limine denied."

We find no explanation in the record to account for the discrepancy between the docket entry showing the motion *in limine* denied and the oral statement of the trial court that the motion was allowed.

During the direct examination of Dr. Herbst, plaintiff's attorney inquired regarding the issue of whether the nursing staff improperly failed to notify Dr. Grady of changes in Bonita's condition. Lakeview's attorney objected on the ground that testimony regarding this issue would violate the court's order *in limine*. At this point, the following colloquy ensued:

"MR. BERNTHAL: *** The doctor in his prior *** testimony at this deposition did not include in fact testified to the contrary that it should not have been called to the doctor and I [*sic*] was not an element of his criticism of the nursing personnel and now counsel is attempting to make that an element of his criticism. We have a transcript and can go right to it, if necessary.

MR. HEFNER: Why don't you go to it.

MR. BERNTHAL: Look at 131 at 25 first. He says—my question, 'But it is your conclusion that if the buttock was swollen as indicated in the 9:50 nurse's entry it would have been observable by Dr. Grady at 8:30 when he was there?' Answer: 'I think that is fair.' 'Based on that assumption, is it your testimony that there would have been no apparent need for the nurse on duty at 9:50 to call Dr. Grady to report that buttock swelling?' Answer: 'It is sort of difficult, you know, nurses in general tend to date reports when they sign them, and she, you know, the difference between 8:50 and 9:30 *** I would suggest it was highly likely she was seeing at this time and could be an hour later when she was signing the report. And I guess what I'm saying it depends if she first saw it at 9:50 and wrote the report and it hadn't been there previously. That is a fuzzy area. I think it would—that sort of sequence in time when she did not call the doctor, did not call Dr. Grady at that time. I would find it difficult to say that was really a breach of standards.'

MR. HELLER: Don't we have the cart before the horse? I asked the foundation question. I haven't pinpointed the 8:30 or the 9:50 visit. I haven't asked him the question about a deviation in the standard.

MR. HEFNER: Over that last testimony you read, what page was that on?

MR. BERNTHAL: 132.

MR. HEFNER: 'Based on your assumption ***' that was the assumption that this was observable by Dr. Grady at 8:30, 'Based on that assumption, is it your testimony there would have been no apparent need for the nurse on duty at 9:50 to call Dr. Grady to report that buttock swelling?' Yesterday Nurse Klaman in response to one of my questions—and the question was, did you observe and did you report at 9:50 p.m. the condition that you noted and recorded at 9:50 p.m.—and her answer was she observed it and recorded it at that time. There is no evidence that—in fact, Dr. Grady was there at 8:00 and not 8:30. The question as I recall it is what the records show. The question is, 'Is it your conclusion if the buttock was swollen it would have been observable by Dr. Grady at 8:30 when he was there.' There is no indication in the record that Dr. Grady was there at 8:30. The note shows 8:00 o'clock. That is one problem with the question he has. And the next question,

'Based on that assumption ***' that Dr. Grady was there at 8:30, '*** is it your testimony there would have been no apparent need for the nurse on duty at 9:50 to call Dr. Grady?' It is not the same situation.

THE COURT: The plain truth is we don't know what the situation is. I'm going to sustain the objection unless there is some more definite showing that—when the doctor was there and when the nurse made her notes. But I think we went into this before when we talked about the motion in limine and I'm going to sustain the objection at least for the time being.

MR. HEFNER: I don't understand. It was established yesterday that Nurse Milleur said she made the observation and made the record at 9:50 p.m. The question assumes that Dr. Grady was there at 8:30.

THE COURT: There is something in the record, I don't remember if it was that nurse or your other expert, that the doctor was there, I think, at 8:30.

MR. HEFNER: At 8:00.

MR. HELLER: There was something where she assumed that he was there at 8:30 when the child had the little tremor.

THE COURT: That is what she said.

MR. HELLER: But that doesn't mean that he was there at 9:50 or doesn't mean that in the face of uncontradicted testimony by Klaman yesterday that she made the observation at 9:50.

THE COURT: She made the entry at 9:50.

MR. HEFNER: I think you will find the question was, did you observe and make the report at 9:50. And we can go back through the notes and find that. She made the notes and observations at 9:50.

THE COURT: That doesn't mean she couldn't have made it earlier.

MR. HEFNER: 'Based on that assumption ***' the assumption is that Dr. Grady was there at 8:30, '*** then it is your testimony that there would have been no apparent need for the nurse on duty at 9:50 to call Dr. Grady to report that buttock swelling?' Answer: He would suggest that it was highly likely she was seeing that at this time and an hour later signing the report.

MR. HELLER: The next sentence nails it down.

MR. HEFNER: 'If she first saw it at 9:50 and quickly wrote the report and it hadn't been there previously—it is a fuzzy

area.' So, the assumption he made in this answer was she observed it earlier and reported it later. The nurse's testimony, and we can go back through her notes was, 'I observed and recorded that at 9:50.'

THE COURT: If you are going to take her words literally and eliminate the possibility that she did not see it before she signed the report, then you are right.

MR. HEFNER: That is what she said and what the evidence is.

THE COURT: You can interpret it more than one way. I think you can see that she signed the report—she made the observation any time she came on duty, but she signed the report at that time.

MR. HELLER: We know she came to work at 3:00. We know she made the observation prior to 9:50.

MR. HEFNER: Maybe it would be helpful if she read the question and answer. I think the posture we are in we have the testimony, which is clear she saw it and signed it at that time. There is no doubt about it. That would be the situation. He has every right to express his opinion. That is not contradictory in the discovery ***.

THE COURT: I will let him answer. All right. You sold me, again."

Subsequently, plaintiff's attorney was allowed to ask Dr. Herbst questions regarding the nurse's failure to notify Dr. Grady of Bonita's changing condition, and Dr. Herbst testified that the nurse's failure to so notify was a deviation from the standard of care.

On appeal, Lakeview argues that Dr. Herbst's testimony regarding the nurse's failure to notify Dr. Grady of Bonita's changing condition violated the court's order *in limine* and Supreme Court Rule 220 (107 Ill. 2d R. 220).

■■■ We first note that Lakeview did not object to the testimony in question at trial based on Supreme Court Rule 220 (107 Ill. 2d R. 220) and failed to make any argument based on Supreme Court Rule 220 in its post-trial motion. It is well settled that a specific objection waives all grounds not asserted. (*People v. Williams* (1983), 97 Ill. 2d 252, 288, 454 N.E.2d 220, 237, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.) Furthermore, failure to raise a point in a post-trial motion acts as a waiver of the issue on appeal. (*People v. Berry* (1984), 99 Ill. 2d 499, 502, 460 N.E.2d 742, 744; *People v. Pruden* (1982), 110 Ill. App. 3d 250, 256, 442 N.E.2d 284, 289.) Additionally, specificity in a post-trial motion is required to preserve issues

for review. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 189, 417 N.E.2d 1322, 1324, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140; *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337.) Consequently, we conclude that Lakeview has waived any argument on appeal based on Supreme Court Rule 220. 107 Ill. 2d R. 220.

Despite our conclusion that Lakeview has waived any argument grounded on Supreme Court Rule 220 (107 Ill. 2d R. 220), we note that this rule offers no support for Lakeview's position on appeal. The relevant portion of this rule provides as follows:

"To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." 107 Ill. 2d R. 220(d).

From our review of the record, it appears that Dr. Herbst was not specifically asked about the nurse's failure to notify Dr. Grady of Bonita's changing condition. Based upon the record presented to this court for review, we cannot conclusively determine that Supreme Court Rule 220 (107 Ill. 2d R. 220) was violated in any way.

■ Lakeview next contends that the order *in limine* should have been enforced. We begin our analysis of this issue with some general observations regarding orders *in limine*. First, as the court stated in *Lundell v. Citrano* (1984), 129 Ill. App. 3d 390, 395, 472 N.E.2d 541, 544-45:

"A motion *in limine* is a pretrial motion in which the movant seeks an order preventing the presentation of inadmissible evidence at trial. (*Department of Public Works & Buildings v. Roehrig* (1976), 45 Ill. App. 3d 189, 194, 359 N.E.2d 752; see also Annot., 63 A.L.R.3d 311 (1975).) The *in limine* order has been characterized as a potent weapon because it enables a party prior to trial to limit or to prohibit interrogation by the other party. (*Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 550, 416 N.E.2d 268.) Because it places these restrictions on the nonmoving party's presentation of its case, it is imperative that the *in limine* order be clear and that all parties accurately understand its parameters. 83 Ill. 2d 545, 416 N.E.2d 268.

\*\*\*

Oral *in limine* motions and orders provide fertile ground for confusion and misunderstanding during the trial. (See *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.) For this reason, in addition to a written motion a written proposed order should be prepared by the moving party prior to the trial court's ruling on the motion. The proposed order must clearly and specifically outline the evidence to be excluded."

Furthermore, as the court stated in *Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 5, 422 N.E.2d 241, 244:

"An order *in limine* merely presents an issue of admissibility of evidence which is likely to arise at trial, in a pretrial setting. As such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial. (*McCormick on Evidence*, Section 52, at 17n. 36.5 (1978 Supp.).) Because the order limits the jury's access to certain evidence, the *in limine* order is a powerful and potentially dangerous weapon. Courts must be certain that the order be specific to preclude introduction of the inadmissible evidence while not restricting the opposing party's presentation of its case. (*Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.) Any correction or interpretation of the order should be made by the trial court to accommodate these competing interests."

We first note that no written proposed order was supplied to the court. A lengthy discussion regarding the motion *in limine*, which contained five separate sections, was conducted. The transcript of this discussion reveals that the trial court agreed with plaintiff's attorney on some of the issues discussed in regard to the motion *in limine*, and that the trial court agreed with Lakeview's attorney regarding some of the other issues that were discussed. The docket entry inexplicably indicates that the motion *in limine* was denied. Thus, it is apparent that the order *in limine* lacked the requisite specificity as discussed in *Lundell v. Citrano* (1984), 129 Ill. App. 3d 390, 472 N.E.2d 541, and *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.

Furthermore, pursuant to *Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 422 N.E.2d 241, the trial court acted correctly in modifying the interlocutory order. Plaintiff sought to introduce testimony from Dr. Herbst based upon recently elicited testimony from one of the nurses who was on duty while Bonita was a

patient of Lakeview. The testimony of this nurse clarified certain entries in the hospital records which Dr. Herbst had reviewed prior to issuing his written report and prior to his deposition. It appears that Dr. Herbst was not asked about the specific issue of the nurse's failure to notify Dr. Grady in his deposition. Consequently, there was no reason to exclude this testimony on the basis of Supreme Court Rule 220 (107 Ill. 2d R. 220), which was the ground for the order *in limine* on this point. Dr. Herbst was apparently equivocal in his criticism of the Lakeview nurses at the time he issued his letter report and at the time of his deposition due to the fact that there were certain ambiguities and missing items of information in the medical report. Based upon the recently elicited testimony of one of the nurses, which clarified the timing of certain entries in the medical report, Dr. Herbst was able to render an opinion that the nurses should have contacted Dr. Grady to inform him of Bonita's changing condition. The trial court's ruling which allowed Dr. Herbst to testify regarding the nurse's failure to notify Dr. Grady was entirely proper. *Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 422 N.E.2d 241.

Lakeview also contends that because Dr. Herbst's testimony on the aforementioned issues was improper, the testimony of Mary R. de Meneses, who has a doctorate in nursing education, on this same issue was also improper because there was no testimony from a physician expert. Lakeview cites absolutely no authority and presents no cogent argument in support of this contention. As the court stated in *Kavanaugh v. Estate of Dobrowolski* (1980), 86 Ill. App. 3d 33, 407 N.E.2d 856, when an appellant seeks reversal, theories presented without authority are deemed waived, and the reviewing court should not search the record for reasons to reverse the trial court's judgment. A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research. (*Pecora v. Szabo* (1982), 109 Ill. App. 3d 824, 825-26, 441 N.E.2d 360, 361; see also *Holliday v. Civil Service Com.* (1984), 121 Ill. App. 3d 763, 460 N.E.2d 358.) Consequently, we find no reason to conclude that any of the testimony of Mary de Meneses was improperly admitted.

■■ ■ We also agree with plaintiff's assertion that even if the trial court erred with respect to allowing Dr. Herbst's testimony regarding the nurse's failure to notify Dr. Grady, Lakeview has totally failed to present any issue, point, meaningful argument, or authority to show or establish prejudice. It is well settled that a reviewing court will not disturb the trial court's decision unless prejudice has resulted.

(*Malek v. Lederle Laboratories* (1984), 125 Ill. App. 3d 870, 466 N.E.2d 1038.) The party asserting error must demonstrate how he was prejudiced, and, absent a clear showing of prejudice, it will not be assumed by a court of review. (*Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 388 N.E.2d 770; *O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 364 N.E.2d 533.) Furthermore, error in the admission of evidence does not require reversal when there has been no prejudice or if the evidence does not materially affect the outcome. *Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 471 N.E.2d 946.

■ In the instant case, the nurse's deviation from the standard of care for failure to notify Dr. Grady of Bonita's changing condition, which Dr. Herbst testified to, was independently established by other competent evidence, specifically the testimony of Mary de Meneses. Thus, this testimony was merely cumulative. Furthermore, even without the testimony regarding the nurse's failure to notify Dr. Grady, there was a totally independent and undisputed basis to assess liability against Lakeview. Dr. Herbst testified that the application of hot packs and heat to Bonita's leg was definitely contraindicated and caused further injury and aggravated and contributed to the injury in Bonita's leg, and that these applications without a doctor's orders were definitely a deviation from the standard of care by the nurses. Mary de Meneses testified to numerous deviations from the standard of care by the nurses, including the application of the hot packs. Even Dr. John G. Raffensperger, one of Lakeview's experts, stated that the application of the hot packs without a doctor's order was improper. We agree with plaintiff's statement that the evidence of the Lakeview nursing staff's negligence was very strong, even in the absence of the evidence supporting the criticism that they failed to notify the doctor of Bonita's deteriorating condition. The jury's decision to assess liability against Lakeview is amply supported by the record in this case. Consequently, we conclude that Lakeview's arguments regarding the expert's testimony are without merit.

In their reply brief, Lakeview points out a discrepancy between a statement in Dr. Herbst's written medical report and the representation of plaintiff's attorney regarding the contents of the written medical report. We first note that Lakeview failed to object to this discrepancy at trial, in its post-trial motion, or in its original brief. It is well settled that a point raised for the first time in a reply brief is waived. (*In re White* (1982), 103 Ill. App. 3d 105, 109, 429 N.E.2d 1383, 1387-88.) Furthermore, we note that Lakeview has failed to point out how this discrepancy prejudiced their case in any significant way. Consequently, we conclude that this point has been waived.

■ The final argument raised by Lakeview on appeal is that the $1,214,548.55 verdict rendered in this case "is excessive and clearly indicates the result of prejudice or passion on the jury's part and fails to obtain a reasonable balance between the amount of damages and the extent of the injuries." Lakeview also asserts that "[t]he record in this case is devoid of any evidence of pain and suffering." We find no merit to these contentions.

As the Illinois Supreme Court stated in *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 452-53, 158 N.E.2d 63, 69:

"[I]t has long been the law in Illinois that the amount of a verdict is largely within the discretion of the jury. [Citations.] *** Each verdict for a personal injury must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post-trial motions."

Furthermore, as the court stated in *Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 334-35, 481 N.E.2d 957, 961:

"Our supreme court has stated that the amount of damages to be assessed is peculiarly a question of fact for the jury, and that if the jury has been properly instructed on the measure of damages, a reviewing court should not substitute its judgment for that of the jury as to the sum to be awarded. (*Baird v. Chicago, Burlington & Quincy R.R.* (1976), 63 Ill. 2d 463, 472-73, 349 N.E.2d 413). The test for an excessive verdict is whether it falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. (*LeMaster v. Chicago Rock Island & Pacific R.R.* (1976), 35 Ill. App. 3d 1001, 1030, 343 N.E.2d 65). The propriety of an award of damages for personal injuries is not subject to mathematical computation, nor may it be measured by comparison with verdicts in other cases. 'Each verdict for personal injury must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post-trial motions.' *Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 453, 158 N.E.2d 63."

From our review of the record of this case, we conclude that the amount of the verdict is amply supported by the evidence which was adduced at trial. Bonita has suffered the loss of her right foot and will require additional amputation surgery to correct a varus deformity or bowing in her right tibia. Bonita will always walk with a limp and at an uneven gait. It is likely that she will experience degenerative ar-

thritic changes in the good knee due to increased pressure on that joint, and she could develop stresses in her back. The injury has had a dramatic effect on Bonita's daily living and has denied her a normal childhood. Bonita has difficulty negotiating steps, and has tripped and fallen in attempting to do so. She also has difficulty sitting at a cafeteria table. Her balance has also been adversely affected. The fact that Bonita has experienced and will continue to experience severe pain and suffering is readily apparent. The jury, in applying its own observation and experience in the affairs of life, could not help but conclude that Bonita has experienced a very significant permanent disability and that, in view of her special needs and circumstances, she will never experience a normal childhood or adult life. Under these circumstances, we conclude that the jury's verdict constitutes fair and reasonable compensation, is amply supported by the evidence in this case, and is not so large that it shocks the judicial conscience. *Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 481 N.E.2d 957.

For the reasons stated herein, the jury's verdict and the judgment entered upon said verdict by the circuit court of Vermilion County are hereby affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.