MILDRED WILSON, Plaintiff-Appellant, v. DEVONSHIRE REALTY OF DANVILLE *et al.*, Defendants-Appellees.

Fourth District    No. 4—99—0080

Argued August 24, 1999.—Opinion filed September 30, 1999.—Rehearing denied November 3, 1999.

COOK, J., dissenting.

Mark E. Bovard (argued) and Harlan Heller, both of Heller, Holmes & Associates, P.C., of Mattoon, for appellant.

Howard W. Small (argued), of Thomas, Mamer & Haughey, of Champaign, for appellees Devonshire Realty of Danville and Devonshire Management Corporation.

Karen L. Kendall (argued), of Heyl, Royster, Voelker & Allen, of Peoria, and Bradford J. Peterson and Keith E. Fruehling, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellee Stradeco, Inc.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

On February 11, 1998, plaintiff, Mildred Wilson (Millie), filed a complaint against defendants, Devonshire Realty of Danville (Devonshire) and Stradeco, Inc. (Stradeco), for injuries sustained from negligent exposure to noxious chemicals at her place of employment. In July 1998, defendants moved for summary judgment, arguing plaintiff's complaint was time-barred by the two-year statute of limitations period for personal injuries. On August 25, 1998, the trial court granted defendants' motions. Plaintiff appeals, arguing the trial court erred in granting summary judgment because a genuine issue of material fact existed in the record. We disagree and affirm.

## I. BACKGROUND

The record on appeal reveals the following. Plaintiff was employed by Devonshire as a realtor pursuant to an independent contract agreement. Devonshire provided office facilities for plaintiff, together with supplies and staff to accomplish the purpose of the independent contract agreement. Plaintiff sold real estate property for Devonshire from its facility at 3100 North Vermilion in Danville, Illinois.

On or about September 1, 1994, defendant Devonshire began remodeling its North Vermilion facility. Plaintiff and other staff members continued to conduct business in the building during the

renovations. Devonshire hired numerous contractors, including Stradeco, to perform renovations in the building. Stradeco was retained in September 1994 to paint several pieces of office furniture in the facility.

In plaintiff's deposition taken on June 22, 1998, plaintiff testified as follows. She experienced signs of illness as soon as she began working in the building in December 1994 or January 1995. Specifically, she experienced respiratory problems while working in the building. At that same time, she experienced skin irritation, which included itching and burning sensations. Due to the strong, unpleasant odors that were present in the building, she attempted to minimize time spent at the office. In January 1995, she was aware of at least six other staff members who were experiencing problems similar to her own. Among those staff members affected, two people were ordered by their doctors not to enter the building. At an office meeting in January 1995, discussions occurred as to whether the building was causing illness among staff members. Similarly, staff members frequently speculated among themselves some condition of the building was the cause of the various illnesses suffered by those working in the building.

At the request of Devonshire, Reed Environmental (Reed) performed indoor air quality tests at the facility in January 1995. In her deposition, plaintiff claimed she was repeatedly told by Devonshire the environmental tests showed no problem existed within the building. Likewise, in an affidavit, plaintiff stated Devonshire repeatedly assured her throughout 1995 and 1996 the building was not the cause of her health problems.

Plaintiff's health problems persisted throughout 1995. As a result, she met with the managing broker of Devonshire on August 22, 1995, specifically to discuss whether the building renovations were the cause of her health problems. Immediately thereafter, on August 23, 1995, plaintiff consulted Dr. Philbert Chen, an occupational physician, about a possible connection between her symptoms and the building renovations. According to Dr. Chen's records, plaintiff informed him when she first entered her office building she noticed a strong odor, which caused temporary respiratory distress and an itching sensation over her skin. Plaintiff discussed at length with Dr. Chen whether the building was the source of her medical problems. Specifically, Dr. Chen's records indicate he informed plaintiff he was "unsure of any connection with her work exposure to her current symptomatology."

Plaintiff continued to work in the facility throughout 1995 and 1996. On April 20, 1997, plaintiff experienced a loss of consciousness that caused her to seek medical treatment. On April 27, 1997, Dr. Da-

vid Purcells, a pulmonary specialist, diagnosed plaintiff with a pulmonary illness and suggested to plaintiff the illness could have been caused by irritants in the workplace. Thereafter, plaintiff met with an employee of Reed to obtain information regarding the results of the air quality tests performed at the building. Plaintiff thereafter ceased acting as an independent contractor for Devonshire.

On February 11, 1998, plaintiff filed her complaint against defendants, alleging she developed symptoms of occupational asthma and multiple chemical sensitivity after January 1, 1995, as a result of negligent exposure to noxious chemicals. The trial court granted defendants' motions for summary judgment, finding plaintiff's complaint was untimely under the applicable two-year statute of limitations. This appeal followed.

On appeal, plaintiff argues the trial court erred in granting summary judgment in favor of the defendants based on the expiration of the statute of limitations. Specifically, plaintiff argues (1) a genuine issue of material fact existed as to the date upon which the plaintiff knew or should have known a cause of action existed against defendants; (2) defendants fraudulently concealed the wrongful cause of plaintiff's injury; and (3) plaintiff was unable to conduct sufficient discovery. In response, defendants argue the trial court properly granted summary judgment as the only conclusion to be drawn from the undisputed facts was plaintiff failed to file her complaint within the two-year limitations period.

## II. ANALYSIS

■ Summary judgment is appropriate when the pleadings, depositions and affidavits, construed in the light most favorable to the non-movant, present no issue of material fact and show judgment should be granted as a matter of law. The purpose of summary judgment is not to try a question of fact, but rather to determine whether one exists. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 358, 657 N.E.2d 894, 897 (1995). The timeliness of a complaint is a question of law for the trial court when only one conclusion can be drawn from the undisputed facts. *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868-69 (1981). In cases involving summary judgment, the appellate court reviews the evidence in the record *de novo*. *Truman L. Flatt & Sons Co. v. Schupf*, 271 Ill. App. 3d 983, 986, 649 N.E.2d 990, 993 (1995).

The first issue raised on appeal is whether the trial court properly granted summary judgment for the defendants on the ground plaintiff's cause of action was time-barred under the relevant statute of limitations.

■ In the present case, the applicable limitations period is found in section 13—202 of the Code of Civil Procedure (735 ILCS 5/13—202 (West 1998)), which mandates an action for damages for personal injury must be commenced within two years after the cause of action accrues. As a general rule, a cause of action for personal injury accrues at the time plaintiff suffers injury. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77, 651 N.E.2d 1132, 1135 (1995). However, to mitigate the harsh consequences of the literal application of the limitations period, the judiciary created the "discovery rule." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414, 430 N.E.2d 976, 979 (1981). The "discovery rule" postpones commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should know she has been injured and her injury may have been wrongfully caused. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249, 633 N.E.2d 627, 630-31 (1994).

The defendants argue plaintiff's complaint filed February 11, 1998, is untimely because her cause of action accrued at the time of her initial symptoms in January 1995 or in the alternative when she sought medical help regarding her condition in August 1995. In response, plaintiff argues the latent nature of her injury triggers the application of the discovery rule to delay commencement of the limitations period until April 1997, the time at which she was diagnosed with a pulmonary illness.

■ Regardless of whether plaintiff's injury was sustained as a result of a single traumatic event or several ostensibly innocuous circumstances, plaintiff's cause of action accrues when plaintiff knows or reasonably should know she has been injured by the wrongful conduct of another. *VaSalle v. Celotex Corp.*, 161 Ill. App. 3d 808, 810, 515 N.E.2d 684, 686 (1987). The question of when a party knew or reasonably should have known of both an injury and its wrongful cause becomes a question of law for the trial court to determine when only one conclusion can be drawn from the undisputed facts. *Witherell v. Weimer*, 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874 (1981); *Nolan*, 85 Ill. 2d at 171, 421 N.E.2d at 868-69. For purposes of the discovery rule, a party has "knowledge" an injury was wrongfully caused so as to commence the running of the limitations period only when the injured person possesses sufficient information to alert a reasonable person of the need to inquire as to whether the cause of injury is actionable at law. *Knox College*, 88 Ill. 2d at 416, 430 N.E.2d at 980-81.

Plaintiff claims until her diagnosis in April 1997 she was both unaware of her injury and unaware of the causal connection between defendants' actions and her injury. Plaintiff argues she was immediately aware of symptoms of an illness but not the latent

pulmonary disease, which was not diagnosed until April 1997. In support of this argument, plaintiff cites the case of *Nolan*, 85 Ill. 2d at 171, 421 N.E.2d at 868, which involved an action for "latent" physical injuries resulting from asbestos exposure. In this case, the discovery rule operated to toll the running of the limitations period ·from the time of the initial exposure because the plaintiffs in question did not discover they suffered *any* injury until long after the tortious conduct occurred.

The facts of the present case, however, are inapposite to those of *Nolan*. Here, plaintiff knew she suffered *some* injury no later than August 1995. Plaintiff's complaint makes clear she knew she had occupational asthma and multiple chemical sensitivity around January 1, 1995. An affidavit filed by plaintiff states she had conversations with Devonshire throughout 1995 and 1996 in which she discussed with Devonshire whether the illnesses being suffered by herself and others were caused by some condition in the building. In sum, plaintiff expressly admits through her pleadings she was exposed to chemicals as early as December 1994, developed symptoms in January 1995, and raised the question of whether the building was causing her symptoms in August 1995.

Thus, the present case does not involve a plaintiff who failed to discover *any* injury but, rather, a plaintiff who failed to discover the full extent of her injuries before the expiration of the statute of limitations. Our supreme court held in *Golla*, 167 Ill. 2d at 364, 657 N.E.2d at 900, that the limitations period commences when the plaintiff is injured, rather than when plaintiff realizes the consequences of the injury or the full extent of the injury. Hence, the undisputed facts demonstrate the plaintiff knew, no later than August 1995, she suffered an injury and the injury may have been wrongfully caused. Once plaintiff was aware of *any* injury and its possible cause, she was aware of her right to sue.

Plaintiff argues although she may have sustained some injury as early as August 1995, she did not know the injury was wrongfully caused until April 1997. Relying on *Witherell*, 85 Ill. 2d at 155, 421 N.E.2d at 874, plaintiff argues her knowledge of the injury substantially preceded knowledge of its cause so as to delay or toll the running of the limitations period pursuant to the discovery rule. We disagree.

As discussed above, the undisputed facts demonstrate plaintiff had conversations with Devonshire throughout 1995 and 1996 in which she questioned whether her illness was caused by some condition in the building. She also knew other staff members experienced similar problems and two had been ordered by their doctors not to enter the

building. Further, in August 1995, plaintiff had a lengthy discussion with Dr. Chen as to a possible connection between the building and her illness.

■ Hence, we find as a matter of law only one conclusion can be drawn from the undisputed facts. The plaintiff had sufficient knowledge of an injury and that knowledge was gained no later than August 1995 and that knowledge was sufficient to put her on notice her rights had been violated, giving her reasonable opportunity to bring an action within the limitations period. In so finding, we note the purpose of a limitations period is to encourage claimants to investigate and pursue causes of action and to discourage delay in the bringing of claims. See generally *Sepmeyer v. Holman*, 162 Ill. 2d 249, 262-63, 642 N.E.2d 1242, 1248 (1994). Accordingly, statutes of limitations rest upon the premise " 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.' [Citation.]" *Golla*, 167 Ill. 2d at 369, 657 N.E.2d at 902.

Plaintiff's second contention on appeal is defendant Devonshire fraudulently concealed and intentionally misled her as to the wrongful cause of her injury. Plaintiff, relying on *Huffman v. Gould*, 327 Ill. App. 428, 439, 64 N.E.2d 773, 779 (1945), argues Devonshire's repeated misrepresentations regarding the building's air quality create a question of fact for the jury as to whether the such fraudulent concealment tolled the statute of limitations or, in the alternative, whether defendants should be equitably estopped from asserting a limitations defense.

■ To state a *prima facie* case of fraudulent concealment, plaintiff must allege acts or misrepresentations affirmatively showing fraudulent concealment of a cause of action that prevented the discovery of the cause of action. *Pratt v. Sears Roebuck & Co.*, 71 Ill. App. 3d 825, 830, 390 N.E.2d 471, 475 (1979); *Harvey v. Harris Trust & Savings Bank*, 73 Ill. App. 3d 280, 286-87, 391 N.E.2d 461, 466 (1979). In the present case, plaintiff's allegations of fraudulent concealment are as follows. Plaintiff claims Devonshire repeatedly assured her the air quality tests demonstrated the building was not the source of her illness. Plaintiff further alleges she discovered in 1997, after contacting Reed, the representations made by Devonshire regarding the air quality were "not entirely truthful." We conclude, absent any indication plaintiff was prevented from obtaining the results of the environmental tests during the two-year period immediately following her injury, plaintiff fails to state a *prima facie* case of fraudulent concealment.

■ Last, plaintiff argues the trial court improperly granted summary judgment in favor of defendants before plaintiff was allowed to conduct sufficient discovery. This issue, however, is forfeited for the

purposes of appellate review as plaintiff failed to cite authority in support of her contention. *Crawford County State Bank v. Grady*, 161 Ill. App. 3d 332, 342-43, 514 N.E.2d 532, 539 (1987); *Poelker v. Warrensburg-Latham Community Unit School District No. 11*, 251 Ill. App. 3d 270, 275, 621 N.E.2d 940, 945 (1993).

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Vermilion County is affirmed.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE COOK, dissenting:

I suggest the following issues of fact are present in this case:

(1) when the remodeling began, whether plaintiff suffered only a noncompensable minor discomfort or an injury "sufficient to put her on notice that her rights had been violated and [give] her a reasonable opportunity to bring an action" (*Golla*, 167 Ill. 2d at 369, 657 N.E.2d at 902);

(2) assuming that plaintiff reasonably knew of an injury, whether she should reasonably have known that it was wrongfully caused by the remodeling project, as opposed to something in the air, in the water, in her genetic makeup, or in one of the products used in modern offices (toners, cleansers, air filters, *et cetera*); and

(3) whether Devonshire, and perhaps Stradeco, should "be held estopped by their conduct from now urging that plaintiff should have sooner complained against them for a condition they repeatedly assured her she did not have" (*Witherell*, 85 Ill. 2d at 160, 421 N.E.2d at 876).

> "The statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. *At that point* the burden is upon the injured person to inquire further as to the existence of a cause of action. [Citations.] In many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact. [Citation.] Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court." (Emphasis added.) *Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874.

In *Witherell*, plaintiff began experiencing problems shortly after

she began taking a birth control pill in 1966. She was hospitalized in 1967, she experienced "excruciating pain," she was told by her mother and other women that the pill could cause blood clots, she was told by Dr. Taubert in 1967 and again in 1972 that she had blood clots, and she was hospitalized a second time in 1972. Given these "severe difficulties" which plaintiff was having, it was inconceivable to the *Witherell* court that a reasonable person would not have realized, at least by the time of the second hospitalization, that she may not have been receiving proper diagnosis and treatment. *Witherell*, 85 Ill. 2d at 156-57, 421 N.E.2d at 874-75.

What "severe difficulties" was plaintiff experiencing in the present case? Plaintiff experienced "respiratory problems" and "skin irritation" in January 1995. There were "strong, unpleasant odors." Other employees had these same experiences, discussions were had and some employees "speculated" some condition of the building was a cause of their various ailments. 307 Ill. App. 3d at 803. In *Witherell*, before the limitations period was held to begin the plaintiff was hospitalized, suffered excruciating pain, and was explicitly told by a doctor that she had blood clots. In *Hutson v. Hartke*, 292 Ill. App. 3d 411, 412, 686 N.E.2d 734, 735 (1997), the plaintiff almost blacked out on the day of the incident but was able to make it outside without fainting. In the present case, plaintiff did not lose consciousness until April 20, 1997, which caused her to seek medical treatment. How can we say there is no issue of fact in this case? The test is not whether plaintiff reasonably *suspects* an injury and that it was wrongfully caused, but whether plaintiff reasonably *knows* of that injury and cause. The test is not what plaintiff *could* have done, but what it was *reasonable* for plaintiff to have done. The majority's rule will require employees to be hypochondriacs, stirring up trouble in the workplace whenever those employees have a runny nose or a rash.

The fact the *Witherell* plaintiff was misled by the advice she was given by her doctors did not delay the accrual of her cause of action against the manufacturer of the birth control pill, but it did delay accrual against the doctors. "[C]onsiderations of fundamental fairness require that the defendant doctors be held estopped by their conduct from now urging that plaintiff should have sooner complained against them for a condition they repeatedly assured her she did not have." *Witherell*, 85 Ill. 2d at 160, 421 N.E.2d at 876. In *Witherell*, the plaintiff knew of her injury in 1972 even though her treating physicians, potential defendants in the case, told her *after* 1972 that her problems were muscular. In this case, the plaintiff did not know that she had been injured when she went to see Dr. Chen, an independent witness, in August 1995. Unlike *Witherell*, Dr. Chen was not covering up his

own malpractice when he told plaintiff he was unsure of any connection with her work exposure to her current symptomatology. Nothing indicates that Dr. Chen was incompetent or mistaken. *Cf. Witherell*, 85 Ill. 2d at 157, 421 N.E.2d at 875, quoting *United States v. Kubrick*, 444 U.S. 111, 124, 62 L. Ed. 2d 259, 270, 100 S. Ct. 352, 360 (1979) (" 'fails to bring suit because he is incompetently or mistakenly told that he does not have a case' ").

The *Witherell* statement, that when only one conclusion can be drawn from the undisputed facts the question is for the court, appears to be nothing more than the familiar statement that summary judgment is appropriate absent a genuine issue of a material fact. See *In re Estate of Rennick*, 181 Ill. 2d 395, 401, 692 N.E.2d 1150, 1153 (1998). More than one conclusion can certainly be drawn in this case. True, a court can enter a summary judgment, even given a genuine issue of material fact, if what is contained in the pleadings and the affidavits would have constituted all of the evidence before the court at trial and, upon such evidence, there would be nothing left to go to a jury and the court would be required to direct a verdict. *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971). In this case, it cannot be said that all the evidence that would have been before the court at the time of trial was before the court at the summary judgment stage. See *Rotzoll v. Overhead Door Corp.*, 289 Ill. App. 3d 410, 420-25, 681 N.E.2d 156, 163-66 (1997) (Cook, J., dissenting). The motion for summary judgment here was filed after plaintiff's deposition was taken, before plaintiff had taken any discovery. Plaintiff, in her response to the motion for summary judgment, asked to be allowed to take discovery before the motion for summary judgment was decided, but that request was denied. In contrast, the motion for summary judgment in *Golla* was decided after discovery had been taken. *Golla*, 167 Ill. 2d at 357-58, 657 N.E.2d at 896-97. The *Witherell* court considered plaintiff's affidavit, her answers to interrogatories, affidavits from the defendant doctors, affidavits from two other doctors, affidavits from a nurse, and plaintiff's rebuttal affidavit.

During oral argument, Stradeco argued that it should not be charged with any concealment done by Devonshire because Devonshire's actions were not taken on its behalf. Without discovery, however, we do not know the relationship between Stradeco and Devonshire. The majority sees it as significant that in January 1995 two other employees were ordered by their doctors not to enter the building. 307 Ill. App. 3d at 803. Why did the doctors enter those orders? Did the doctors diagnose a specific illness, or did they enter their orders as a precaution? Did the employees return to the building?

What steps did the doctors require before the employees returned? Without discovery, we cannot know.

The unrebutted deposition of plaintiff must be taken as true. *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998). Plaintiff testified that Devonshire performed indoor air quality tests at the facility, and she was repeatedly told by Devonshire that no problem existed within the building and the building was not the cause of her health problems. The majority avoids this issue with the amazing argument that plaintiff should not have believed Devonshire. "[A]bsent any indication plaintiff was prevented from obtaining the results of the environmental tests during the two-year period immediately following her injury, plaintiff fails to state a *prima facie* case of fraudulent concealment." 307 Ill. App. 3d at 807. The majority's imposition of extraordinary burdens on plaintiff, and its willingness to ignore the misconduct of defendant, is contrary to *Witherell*. " 'To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. *** [T]his principle *** has frequently been employed to bar inequitable reliance on statutes of limitations.' " *Witherell*, 85 Ill. 2d at 158, 421 N.E.2d at 875, quoting *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232-33, 3 L. Ed. 2d 770, 772, 79 S. Ct. 760, 762 (1959).

The majority cites *Golla* for the proposition that the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or its full extent. *Golla*, however, involved a sudden traumatic event, an automobile accident, in which the defect in the automobile seat was apparent. The *Golla* plaintiff contended that her injury was *de minimis* when compared with the latent injury she discovered later, but the court noted her immediate injuries were sufficiently severe as to be compensable. *Golla*, 167 Ill. 2d at 367, 657 N.E.2d at 901. Her injuries, even if characterized as *de minimis*, were sufficient to put her on notice that her rights had been violated and gave her a reasonable opportunity to bring an action within the limitations period. *Golla*, 167 Ill. 2d at 369, 657 N.E.2d at 902. That is not true in the present case. Plaintiff here did not immediately know what had gone wrong as did the plaintiff in *Golla* (the automobile seat). No sudden traumatic event occurred in the present case, but an exposure to workplace conditions over a period of time, as in *Nolan*, 85 Ill. 2d at 171-72, 421 N.E.2d at 869, where the court held the question when the limitations period commenced was one for the trier of fact. The plaintiff in *Nolan* knew that he had lung problems in 1957 and that he had pulmonary fibrosis in 1965, but there was a jury question whether he should reasonably have known before 1973 that his condition was caused by exposure to

asbestos materials at work. *Nolan*, 85 Ill. 2d at 171-72, 421 N.E.2d at 869. There was no immediate compensable injury in the present case, unless we are willing to accept the argument that a plaintiff can recover for a runny nose and an itch. Those conditions were only symptoms, perhaps symptoms of nothing.

I would reverse the summary judgment for plaintiffs and remand for further proceedings.