(No. 77349.—

SISTER MARIE GOLLA, Appellant, v. GENERAL MOTORS CORPORATION, Appellee.

*Opinion filed October 19, 1995.*

354

D. Cameron Dobbins and Cheryl A. Handy, of Dob-

bins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant.

R. Michael Henderson and David B. Collins, of Quinn, Johnston, Henderson & Pretorius, Chrtd., of Peoria, and John E. Muench and Jeffrey W. Sarles, of Mayer, Brown & Platt, of Chicago, for appellee.

Gregory C. Ray, of Craig & Craig, of Mattoon, for *amicus curiae* Illinois Association of Defense Trial Counsel.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The plaintiff, Sister Marie Golla, brought a products liability action in the circuit court of Champaign County against the defendant, General Motors Corporation, seeking damages allegedly caused by a defective automobile manufactured by the defendant. The trial court entered summary judgment in favor of the defendant on the ground that the action was barred by the statute of limitations. The appellate court affirmed. (261 Ill. App. 3d 143.) We allowed the plaintiff's petition for leave to appeal. (145 Ill. 2d R. 315.) We now affirm.

According to the allegations in the plaintiff's complaint, the plaintiff purchased a 1984 Buick Skylark on June 21, 1984. On September 3, 1985, the plaintiff was operating this Buick when it was involved in a collision with another automobile. At the time of the collision, the plaintiff's seat slid violently forward, subjecting the plaintiff's left shoulder to trauma from the three-point passenger restraint that she was wearing. As a result, the plaintiff allegedly developed reflex sympathetic dystrophy (RSD). The plaintiff filed her complaint against the defendant on August 7, 1989, almost four years after the accident occurred. The complaint alleged that the Buick was not reasonably safe when it left the

defendant's control because a defect in the driver's seat caused that seat to slide forward upon impact.

The defendant filed an answer and raised the statute of limitations as an affirmative defense. Thereafter, the defendant filed a motion for summary judgment, asserting that the plaintiff's action was barred under the two-year limitations period found in section 13—202 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 13—202). Attached to the motion as an exhibit was a request to admit facts which the defendant had sent to the plaintiff. The request asked the plaintiff to admit that she was involved in an automobile accident on September 3, 1985; that she was seen by Dr. Sol Barnett on that same day immediately after the accident; that she was seen by Dr. Barnett again the following day, at which time she complained of left wrist discomfort and swelling; and that she was seen by Dr. Barnett on April 8, 1986, complaining of discomfort in her left shoulder and left arm. The plaintiff did not respond to the request and, therefore, these facts were deemed admitted. (134 Ill. 2d R. 216.) The defendant's motion argued that these admissions demonstrated that the plaintiff was aware of her injuries on September 3, 1985, the date of the accident, and that the limitations period expired two years from that date.

In response to the defendant's motion for summary judgment, the plaintiff asserted that her action was not time-barred because the discovery rule found in section 13—213(d) of the Code applied. (Ill. Rev. Stat. 1991, ch. 110, par. 13—213(d).) She claimed that the statute of limitations did not begin to run until doctors diagnosed her condition as RSD in March of 1988. In support of this claim, the plaintiff filed an affidavit stating that she did not experience symptoms of RSD until November 1987 and that the condition was not diagnosed until March 1988.

The trial court denied the defendant's motion for summary judgment, concluding that the discovery rule applied and that the plaintiff's response to the motion for summary judgment raised a genuine issue of material fact as to when the plaintiff knew or should have known of the existence of personal injury. The defendant then filed a motion to reconsider the denial of its motion for summary judgment. Attached to the motion to reconsider as exhibits were several documents, including a letter of complaint that the plaintiff sent to Buick's district office on June 4, 1986. In this letter, the plaintiff stated:

"On September 3, 1985, our car, a 1984 Buick Skylark was involved in an accident in which in [sic] sustained considerable damage. So violent was the impact of the crash that the front seat broke lose [sic] from the floor causing considerable physical hurt from the seat beat [sic] which forced me to remain in place."

In addition to this letter, the defendant submitted, as exhibits, portions of Dr. Barnett's medical records and discovery deposition. These exhibits revealed that Barnett examined the plaintiff on September 3, 1985, shortly after the accident, and determined that the plaintiff suffered from a contusion of the chest as a result of the accident. The next day, September 4, 1985, Barnett again examined the plaintiff and determined that she had suffered a sprain or contusion of the left wrist.

The defendant also attached to the motion to reconsider portions of the discovery depositions of Drs. Brown, McGuire, Depersio, and Dallas, each of whom had examined the plaintiff after she was diagnosed with RSD. Each doctor testified during the deposition that he obtained a medical history from the plaintiff before examining her. The doctors testified that they were told by the plaintiff either that she had developed RSD in 1985 or that she began to experience pain or other

symptoms of RSD in 1985, after her automobile accident. The defendant's motion to reconsider alleged that the plaintiff's 1986 letter to Buick and statements that she made to various physicians established, as a matter of law, that the plaintiff knew of an actionable injury immediately after the accident.

The plaintiff filed a reply to the motion for reconsideration, in which she pointed out that her 1986 letter to Buick was a complaint about repairs performed on her automobile. The plaintiff also attached the depositions of Drs. Rubenstein and Quigg to her reply. Dr. Rubenstein's deposition testimony revealed that the plaintiff, following the accident, experienced a lack of dexterity and an uncomfortable coolness in her left hand, "forcing her to give up avid piano playing." The plaintiff attributed these symptoms to her previously diagnosed migraine headaches. Dr. Quigg's deposition revealed that, although the plaintiff experienced new neurological symptoms after her accident, she assumed that these symptoms were simply manifestations of previously diagnosed conditions for which the plaintiff was being treated. The trial court granted the defendant's motion for reconsideration and entered summary judgment in favor of the defendant.

Summary judgment is appropriate when the pleadings, depositions and affidavits, construed most strongly against the movant and most liberally in favor of the opponent, present no genuine issue of material fact and show that judgment should be granted as a matter of law. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417.) The purpose of summary judgment is not to try a question of fact but to determine whether one exists. (*Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152.) If only one conclusion can be drawn from the undisputed facts, then the timeliness of the plaintiff's complaint becomes a question of law for the trial court to deter-

mine. *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171.

The only issue raised in this appeal is whether the circuit court properly granted summary judgment for the defendant on the ground that the plaintiff's August 1989 complaint was time-barred under the statute of limitations. In resolving this issue, we must consider a question of first impression: when an accident occurs which causes the plaintiff to suffer an immediate physical injury (*e.g.*, chest contusion) and later more serious injuries appear (*e.g.*, reflex sympathetic dystrophy) which arose from the same accident, when does the plaintiff's cause of action "accrue" for statute of limitations purposes?

The only provision in the Limitations Act which pertains specifically to products liability actions states:

> "Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced *except within the applicable limitations period* and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller ***." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 110, par. 13—213(b).)

In this case, the "applicable limitations period" referred to in section 13—213 is found in section 13—202 of the Code, which states that "[a]ctions for damages for an injury to the person *** shall be commenced within 2 years next after the cause of action accrued." (Ill. Rev. Stat. 1991, ch. 110, par. 13—202.) The parties here dispute when the plaintiff's cause of action accrued, thereby triggering the two-year statute of limitations.

The defendants argue that the plaintiff's cause of action accrued at the time of the accident, in September 1985. The plaintiff, on the other hand, asks this court to apply the "discovery rule" found in section 13—213(d) to find that her cause of action did not accrue until she "discovered" that she was suffering from RSD. Section 13—213(d) states:

"Notwithstanding the provisions of subsection (b) *** if the injury complained of occurs within any of the periods provided by subsection (b) *** the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury, *** but in no event shall such action be brought more than 8 years after the date on which such personal injury *** occurred." (Ill. Rev. Stat. 1991, ch. 110, par. 13—213(d).)

The plaintiff argues that the date of discovery was in March 1988, when she was diagnosed as suffering from RSD. The plaintiff asks that we apply the discovery rule to delay commencement of the two-year statute of limitations until March 1988, when her physicians first diagnosed her condition as RSD. She argues that two medically distinct injuries arose out of the automobile accident and that her physicians could not have discovered the latent injury, RSD, within the two-year limitations period. She argues that her complaint was timely filed within two years of the date of discovery of this latent injury.

As a general rule, a cause of action for personal injuries accrues when the plaintiff suffers injury. (See *West American Insurance Co. v. Sal E. Lobianco & Son Co.* (1977), 69 Ill. 2d 126, 130; *Hermitage Corp. v. Contractors Adjustment Co.* (1995), 166 Ill. 2d 72.) Traditionally, the limitations period was not tolled simply because the plaintiff was unaware of the existence of an injury. (See *Bates v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 137, 139.) Thus, mechanical application of the statute of limitations could, in some situations, bar plaintiffs from bringing suit before the plaintiff was even aware that he was injured. To alleviate the harsh consequences that would flow from literal application of the limitations period, the judiciary created the "discovery rule." The effect of the discovery rule, which this court first adopted in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 72-

73, is to postpone the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer* (1994), 158 Ill. 2d 240, 249.

Since *Rozny*, the discovery rule has been applied to a wide variety of actions. (See, *e.g., Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 414 (tortious misrepresentation and fraud); *Witherell v. Weimer* (1981), 85 Ill. 2d 146 (strict tort liability action for personal injuries); *Jackson Jordan*, 158 Ill. 2d 240 (legal malpractice).) The legislature has also incorporated the discovery rule into several statutes of limitations, including that applicable to products liability actions. See Ill. Rev. Stat. 1991, ch. 110, par. 13—213.

Notwithstanding the formulation and application of the discovery rule across a broad spectrum of litigation, including products liability actions, this court has repeatedly held that, where the plaintiff's injuries are caused by a sudden traumatic event, the plaintiff's cause of action accrues when the injury occurred. In *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, the plaintiff, who was run over by a trenching machine, brought a products liability action against the manufacturer of the machine. The defendant manufacturer claimed that the plaintiff's cause of action accrued when the allegedly defective machine left the manufacturer's control. The *Williams* court rejected this contention and found that the limitations period commenced when the defective product injured the plaintiff. The court specifically stated that a products liability action "to recover for personal injuries resulting from a sudden traumatic event accrues *when plaintiff first knew of his right to sue, i.e., at the time when the injury occurred.*" (Emphasis added.) *Williams*, 45 Ill. 2d at 432.

In *Berry v. G.D. Searle & Co.* (1974), 56 Ill. 2d 548,

the plaintiff filed a products liability action against the manufacturer and seller of birth control pills alleging that she had suffered a stroke as a result of the unreasonably dangerous nature of the pills. The plaintiff filed her action more than two years after her stroke occurred. Quoting *Williams*, the court noted that " 'an action to recover for personal injuries resulting from a sudden traumatic event accrues when plaintiff first knew of his right to sue, *i.e., at the time when the injury occurred.*' " (Emphasis in original.) (*Berry*, 56 Ill. 2d at 558, quoting *Williams*, 45 Ill. 2d at 432.) The court rejected the plaintiff's claim that her cause of action did not accrue until two years after the stroke occurred, when she discovered that the pills may have caused the stroke. The *Berry* court stated:

"We find it unnecessary to consider at length plaintiff's contention that her action in strict tort liability accrued on June 1, 1967, as alleged in her complaint. It asserts that on May 30, 1965, she suffered a cerebral vascular accident. Her reply brief candidly states that she 'knew she was ill, that she had suffered a stroke and was partially and permanently paralyzed.' However, she maintains that it was not until June 1, 1967, that she knew that Enovid was the cause of this condition. From plaintiff's description of the severity of her condition in the complaint and her reply brief it is inconceivable that her injury was not occasioned by a traumatic event and that she knew of this injury more than two years prior to the filing of her complaint.

We conclude that the requirement of section 14 of the Limitations Act was not fulfilled and recovery under count II is barred." *Berry*, 56 Ill. 2d at 559.

As the above cases demonstrate, this court has repeatedly held that where the plaintiff's injury is caused by a "sudden traumatic event," such as the automobile accident that occurred in this case, the cause of action accrues, and the statute of limitations begins to run, on the date the injury occurs. (*Berry*, 56 Ill. 2d 548;

*Williams*, 45 Ill. 2d 418.) Our appellate court has likewise consistently applied this rule. (See *Sharpenter v. Lynch* (1992), 233 Ill. App. 3d 319; *Walters v. Marion Memorial Hospital* (1991), 217 Ill. App. 3d 744; *Franke v. Geyer* (1991), 209 Ill. App. 3d 1009; *Ravin v. A.H. Robins Co.* (1989), 182 Ill. App. 3d 46; *Tate v. Beverly Chrysler Plymouth* (1989), 182 Ill. App. 3d 830; *Bates v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 137; *Ikenn v. Northwestern Memorial Hospital* (1979), 73 Ill. App. 3d 694.) The rationale supporting this rule is that the nature and circumstances surrounding the traumatic event are such that the injured party is thereby put on notice that actionable conduct might be involved. Applying the "sudden, traumatic event" rule announced in *Williams* and *Berry* to this case, we hold that the plaintiff's cause of action accrued at the time of the accident. The plaintiff knew, at that time, that she suffered an injury and that the injury may have been wrongfully caused. Thus, at the time of the accident, the plaintiff was aware of her right to sue and the two-year limitations period commenced to run.

The plaintiff makes several arguments in support of applying the discovery rule found in section 13—213(d) of the Code to her complaint. First, she argues that the policy reasons underlying the discovery rule support application of that rule in the present case. As previously stated, the discovery rule is an equitable device designed to eliminate the unfairness that would result to a plaintiff whose right to bring an action for an injury is cut off before she is aware of the existence of such action. She argues that, in keeping with this purpose, the rule should be applied in this case to delay commencement of the limitations period from the date of the accident until the date she discovered that she suffers from RSD. We disagree.

The discovery rule delays commencement of the ap-

plicable limitations period until the plaintiff knows or should have known that she is injured and that such injury may have been wrongfully caused. (See *Hermitage Corp. v. Contractors Adjustment Co.* (1995), 166 Ill. 2d 72.) The rule itself thus negates its application in the present factual situation. The plaintiff here does not claim that she was unaware of any injury at the time of the accident or that she was unaware of the causal connection between that injury and the allegedly defective automobile seat. Rather, she claims that, at the time of her initial injury, she was unaware of the ultimate extent of damages she sustained. This court has never suggested that plaintiffs must know the full extent of their injuries before the statute of limitations is triggered. Rather, our cases adhere to the general rule that the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or the full extent of her injuries. See *Hyon Waste Management Services, Inc. v. City of Chicago* (1991), 214 Ill. App. 3d 757, 762-63 ("the mere fact that the extent of its damages is not immediately ascertainable does not postpone the accrual of a plaintiff's claim"); *Swider v. Holy Cross Hospital* (1986), 146 Ill. App. 3d 740, 742.

The plaintiff next suggests that application of the discovery rule to delay commencement of the limitations period is justified when one balances the relative hardship that she will suffer if her cause of action is barred against the hardship the defendant will endure if the limitations period is tolled. The plaintiff's argument reflects a fundamental misunderstanding of the balancing test proposed in *Rozny*. The *Rozny* court held that the interests of the plaintiff and defendant should be identified and weighed in determining whether the discovery rule should apply in a given case. The *Rozny* court made clear, however, that the interests of the

plaintiff would prevail over those of the defendant, and the discovery rule would apply, *only* in circumstances where a plaintiff neither knew nor should have known of the existence of her right to sue within the applicable limitations period. (*Rozny*, 43 Ill. 2d at 70.) The *Rozny* court stated:

"The basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff *who neither knows nor should have known of the existence of his right to sue.* There are some actions in which the passage of time, from the instant when the facts giving rise to liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. [Citations.] But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he *knew or should have known of the existence of the right to sue.* [Citations.]" (Emphasis added.) *Rozny*, 43 Ill. 2d at 70.

In the present case, it is apparent that the plaintiff knew or should have known of the existence of the right to sue the defendant at the time of the accident. At that time, there was, without question, an injury of some magnitude to the plaintiff. The plaintiff immediately sought medical attention for that injury. It is also apparent that the plaintiff was on notice that her injury may have been wrongfully caused by a defect in the automobile, since she knew that her injury occurred because the driver's seat slid forward at the time of impact. Because the plaintiff knew or should have known of the existence of the right to sue *at the time of the accident*, application of the *Rozny* balancing test to delay commencement of the limitations period is inappropriate under the facts of this case.

The plaintiff next draws this court's attention to a

number of cases that have applied the discovery rule in circumstances where plaintiffs did not discover that they were injured until long after the negligent acts occurred. She argues that the discovery rule should likewise apply here because she did not discover that she suffered from RSD until long after the accident occurred.

The cases that the plaintiff cites, which involve actions for "latent" physical injuries, can be grouped into two classes: (1) cases involving plaintiffs who were exposed to toxic products in the workplace; and (2) medical malpractice cases. In the former class of cases, which generally involve asbestos-related diseases, the plaintiffs did not know within the applicable limitations period that a potentially harm-producing event had taken place. In these cases, the plaintiffs typically did not know that the product was harmful at the time of exposure, and their injuries did not become apparent or even discoverable until many years after exposure to the offending product. (See, *e.g., Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161.) The discovery rule was properly applied in such "nontraumatic event" cases to toll the running of the limitations period until the plaintiff either knew or reasonably should have known that he was injured and that the injury was wrongfully caused. *Nolan*, 85 Ill. 2d at 168.

A similar rationale has been employed in medical malpractice cases, where plaintiffs did not discover that they suffered a "latent" injury until years after the negligent acts took place. (See, *e.g., Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32 (two years after initial biopsy erroneously determined that lump was benign, plaintiff discovered that lump was actually malignant and underwent radical surgery to remove cancer); *Cuerton v. American Hospital Supply Corp.* (1985), 136 Ill. App. 3d 231 (plaintiff did not discover surgeon's negligence in selecting medical device until years after

surgery, when the device failed, rendering plaintiff a quadriplegic).) In such cases, the discovery rule tolled the limitations period until the plaintiffs knew or should have known that they were injured by tortious conduct.

These asbestos and malpractice cases do not support the plaintiff's position in this case. In those cases, the plaintiffs did not discover that they suffered *any* injury until long after the tortious conduct occurred. Application of the discovery rule in such cases was necessary to prevent the unfairness of charging the plaintiff with knowledge of facts which were "unknown and inherently unknowable." *Urie v. Thompson* (1949), 337 U.S. 163, 169, 93 L. Ed. 1282, 1292, 69 S. Ct. 1018, 1024; see generally W. Keeton, Prosser & Keeton on Torts § 30, at 165-67 (5th ed. 1984).

In this case, on the other hand, the plaintiff knew that she suffered injuries at the time of the accident. She does not contend that her immediate injuries were not compensable. In fact, she tacitly admits that she could have filed suit for such injuries, related medical expenses and pain and suffering within the limitations period. Thus, the present case involves, not a plaintiff who failed to discover *any* injury, but a plaintiff who failed to discover the full extent of her injuries before the statute of limitations expired. There is no requirement that a plaintiff must discover the full extent of her injuries before the statute of limitations begins to run. Because the plaintiff knew or should have known at the time of the accident both that she was injured and that the injury may have been wrongfully caused, the limitations period commenced at that time.

The plaintiff next draws this court's attention to certain appellate court cases involving plaintiffs who sustained obvious physical injuries, but did not discover that such injuries were wrongfully caused until years after the injuries occurred. The cases cited, however,

are all medical malpractice actions involving plaintiffs undergoing medical treatment for preexisting conditions. The plaintiffs therein reasonably assumed that physical injuries arising during the course of medical treatment were simply a natural consequence of their preexisting illness, rather than the result of negligent conduct. See *Watkins v. Health & Hospitals Governing Comm'n* (1979), 78 Ill. App. 3d 468 (where plaintiff reasonably believed that amputation of her leg was necessitated by her diabetic condition, statute of limitations was tolled until she should have reasonably become aware of the possible connection between the amputation and the hospital's negligent administration of a dye test); see also *Pszenny v. General Electric Co.* (1985), 132 Ill. App. 3d 964 (where plaintiff entered hospital suffering from nausea and other complaints arising from an unknown condition, and then experienced similar symptoms as a result of the negligent administration of an iodine dye, statute of limitations did not, as a matter of law, begin to run at the time the dye was negligently administered, since plaintiff may have reasonably believed that the negligently caused nausea arose from her preexisting illness).

The facts here are clearly distinguishable from those in the aforementioned appellate decisions. Those cases involved plaintiffs who knew of an injury but did not know, or have reason to know, that the injury was wrongfully caused. In the present case, on the other hand, the plaintiff knew or should have known at the time of the accident that she suffered a physical injury *and that such injury may have been wrongfully caused.* The limitations period therefore immediately commenced for any injuries arising out of the accident, even though the full extent of those injuries may not have been immediately apparent.

The plaintiff next argues that the two-year statute

of limitations did not commence at the time of the accident because, while she was immediately aware of *some* injury, that injury was *de minimis* when compared with the latent injury (RSD) that she discovered later. She argues that a contrary rule would encourage plaintiffs to sue over virtually every minor injury for fear that more significant injuries might appear later.

We disagree. The injuries that the plaintiff suffered at the time of the accident, even if appropriately characterized as *de minimis*, were sufficient to put her on notice that her rights had been violated and gave her a reasonable opportunity to bring an action within the limitations period. To hold that the statute of limitations did not begin to run until the plaintiff realized the full extent of her damages would circumvent the legislature's intent to promote the prompt resolution of claims.

The plaintiff, in effect, urges this court to adopt a rule that would toll the running of the statute of limitations until the plaintiff perceived herself to be "seriously" injured. She claims that a plaintiff's subjective determination that a particular injury is *de minimis*, and not worth suing for, is a legally sufficient basis to suspend the statute of limitations until the plaintiff subjectively decides that her injuries are serious enough to warrant a lawsuit. We concede that adoption of such a subjective test would give plaintiffs a greater opportunity to seek legal redress against an alleged wrongdoer. Adoption of such an approach, however, eliminates the statute of limitations as a viable defense and undermines the purposes underlying the statute of limitations.

Statutes of limitations rest upon the premise that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." (*Order of R.R. Telegraphers v. Railway Express Agency, Inc.* (1944), 321

U.S. 342, 349, 88 L. Ed. 788, 792, 64 S. Ct. 582, 586.) A limitations period encourages claimants to investigate and pursue causes of action and thereby discourages delay in the bringing of claims. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 132.) The approach urged by the plaintiff, however, simply encourages injured claimants to adopt a "wait and see" strategy and to defer filing lawsuits until the full extent of their injuries becomes apparent. Delayed claims will almost certainly prejudice defendants, who must defend against claims arising out of traumatic events long after witnesses' memories have faded and evidence has become unavailable for testing and inspection. (See *United States v. Kubrick* (1979), 444 U.S. 111, 117, 62 L. Ed. 2d 259, 266, 100 S. Ct. 342, 357; see also *Tom Olesker's Exciting World of Fashion*, 61 Ill. 2d at 132.) Allowing the plaintiff's subjective assessment of the severity of an injury to control when the limitations period commences also creates uncertainty and doubt, where the legislature intended to promote predictability and finality. *Sepmeyer v. Holman* (1994), 162 Ill. 2d 249.

Other drawbacks of the plaintiff's approach are also apparent. Adoption of the plaintiff's approach would potentially allow a plaintiff to split a cause of action and to bring successive lawsuits for injuries arising out of a single tortious act. In fact, the proposed rule would allow injured parties to bring a separate cause of action for each newly discovered injury, even in circumstances where the injured party has already gone to trial and recovered damages for other injuries. Adoption of the plaintiff's approach would also require recognition of a separate two-year limitations period for each medically distinct injury arising from a single traumatic event.

Our courts have consistently held that an action for injuries arising from a sudden traumatic event accrues

when the plaintiff first knew of his right to sue. (*Berry,* 56 Ill. 2d 548; *Williams,* 45 Ill. 2d 418.) This standard contemplates an *objective* analysis of the factual circumstances to determine when the plaintiff knew of an injury and its cause. Here, the plaintiff knew, at the time of the accident, that she suffered an injury and that the injury may have been wrongfully caused. Once the plaintiff was aware of an injury and its possible cause, she was aware of her right to sue. We see no need to further protect the rights of the plaintiff to pursue a claim, because she was equipped with sufficient information to protect that claim.

We reject the contention that the "sudden, traumatic event" rule, as applied here today, is harsh and inequitable to plaintiffs. That rule, in harmony with the statute of limitations, encourages plaintiffs to diligently pursue and investigate a possible cause of action. Once a plaintiff has notice of a physical injury arising from a sudden, traumatic event, she, like other tort claimants, must determine whether or not to file suit. She has two years to consult with the legal and medical community about her claim and resulting damages.

Moreover, even after this two-year period for filing claims has lapsed, a plaintiff who has timely filed suit may still recover for injuries arising from the original traumatic event which were not known at the time the suit was filed. Our liberal pleading rules permit plaintiffs to amend their pleadings to allege additional damages arising from the original tortious conduct. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—616.) Although any bright line rule has the potential for creating hardship in an individual case, the plaintiff cannot persuasively argue that the "sudden, traumatic event" rule is burdensome and unjust to plaintiffs in general.

We therefore answer the question presented in this case as follows: when a plaintiff sustains an immediate

personal injury as a result of a sudden, traumatic event, such as the car accident in this case, the statute of limitations begins to run at the time of the accident. The limitations period is not tolled and does not begin anew simply because a latent injury may arise from the same traumatic event. Here, the pleadings, depositions and affidavits in the record establish, as a matter of law, that the plaintiff sustained a physical injury at the time of the accident. Thus, the plaintiff's cause of action for personal injuries accrued on September 3, 1985, and the limitations period commenced to run on that date. Plaintiff's August 1989 complaint for personal injuries arising from that accident was barred by the two-year limitations period. Accordingly, the judgment of the appellate court is affirmed.

*Affirmed.*