30 September 1999

NO. 4-99-0080 

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MILDRED WILSON,       )   Appeal from

Plaintiff-Appellant,            )   Circuit Court of

v.                 )   Vermilion County

DEVONSHIRE REALTY OF DANVILLE,            )   No. 98L25

DEVONSHIRE MANAGEMENT CORPORATION, and  )

STRADECO, INC., a Corporation,       )   Honorable

Defendants-Appellees.       )   Thomas J. Fahey,

       )   Judge Presid­ing.

________________________________________________________________

PRESIDING JUSTICE KNECHT delivered the opinion of the 

court: 

On February 11, 1998, plaintiff, Mildred Wilson (Mil

lie), filed a complaint against defendants, Devonshire Realty of Danville (Devonshire) and Stradeco, Inc. (Stradeco), for injuries sustained from negligent exposure to noxious chemicals at her place of employment.  In July 1998, defendants moved for summary judgment, arguing plaintiff's complaint was time-barred by the two-year statute of limitations period for personal injuries.  On August 25, 1998, the trial court granted defendants' motions.  Plaintiff appeals, arguing the trial court erred in granting summary judgment because a genuine issue of material fact existed in the record.  We disagree and affirm.

I. BACKGROUND

The record on appeal reveals the following.  Plaintiff was employed by Devonshire as a realtor pursuant to an independ

ent contract agreement.  Devonshire provided office facilities for plaintiff, together with supplies and staff to accomplish the purpose of the independent contract agreement.  Plaintiff sold real estate property for Devonshire from its facility at 3100 North Vermilion in Danville, Illinois. 

On or about September 1, 1994, defendant Devonshire began remodeling its North Vermilion facility.  Plaintiff and other staff members continued to conduct business in the building during the renovations.  Devonshire hired numerous contractors, including Stradeco, to perform renovations in the building. Stradeco was retained in September 1994 to paint several pieces of office furniture in the facility.  

In plaintiff's deposition taken on June 22, 1998, plaintiff testified as follows.  She experienced signs of illness as soon as she began working in the building in December 1994 or January 1995.  Specifically, she experienced respiratory problems while working in the building.  At that same time, she experi

enced skin irritation, which included itching and burning sensa

tions.  Due to the strong, unpleasant odors that were present in the building, she attempted to minimize time spent at the office.  In January 1995, she was aware of at least six other staff mem

bers who were experiencing problems similar to her own.  Among those staff members affected, two people were ordered by their doctors not to enter the building.  At an office meeting in Janu

ary 1995, discussions occurred as to whether the building was causing illness among staff members.  Similarly, staff members frequently speculated among themselves some condition of the building was the cause of the various illnesses suffered by those working in the building.

At the request of Devonshire, Reed Environmental (Reed) performed indoor air quality tests at the facility in January 1995.  In her deposition, plaintiff claimed she was repeatedly told by Devonshire the environmental tests showed no problem existed within the building.  Likewise, in an affidavit, plain

tiff stated Devonshire repeatedly assured her throughout 1995 and 1996 the building was not the cause of her health problems.     

Plaintiff's health problems persisted throughout 1995.  As a result, she met with the managing broker of Devonshire on August 22, 1995, specifically to discuss whether the building renovations were the cause of her health problems.  Immediately thereafter, on August 23, 1995, plaintiff consulted Dr. Philbert Chen, an occupational physician, about a possible connection between her symptoms and the building renovations.  According to Dr. Chen's records, plaintiff informed him when she first entered her office building she noticed a strong odor, which caused tem

porary respiratory distress and an itching sensation over her skin.  Plaintiff discussed at length with Dr. Chen whether the building was the source of her medical problems.  Specifically, Dr. Chen's records indicate he informed plaintiff he was "unsure of any connection with her work exposure to her current symptomatology."

Plaintiff continued to work in the facility throughout 1995 and 1996.  On April 20, 1997, plaintiff experienced a loss of consciousness that caused her to seek medical treatment.  On April 27, 1997, Dr. David Purcells, a pulmonary specialist, diag

nosed plaintiff with a pulmonary illness and suggested to plain

tiff the illness could have been caused by irritants in the work

place.  Thereafter, plaintiff met with an employee of Reed to obtain information regarding the results of the air quality tests performed at the building.  Plaintiff thereafter ceased acting as an independent contractor for Devonshire.  

On February 11, 1998, plaintiff filed her complaint against defendants, alleging she developed symptoms of occupational asthma and multiple chemical sensitivity after January 1, 1995, as a result of negligent exposure to noxious chemicals.  The trial court granted defendants' motions for summary judgment, finding plaintiff's complaint was untimely under the applicable two-year statute of limitations.  This appeal followed.

On appeal, plaintiff argues the trial court erred in grant­ing summary judg­ment in favor of the defendants based on the expiration of the statute of limitations.  Specifically, plain

tiff argues (1) a genuine issue of material fact existed as to the date upon which the plaintiff knew or should have known a cause of action existed against defen­dants; (2) defendants fraud

ulently concealed the wrongful cause of plaintiff's injury; and (3) plaintiff was unable to conduct sufficient discovery.  In response, defendants argue the trial court prop­erly granted sum­

mary judg­ment as the only conclu­sion to be drawn from the undis

puted facts was plain­tiff failed to file her complaint within the two-year limitations period.

II. ANALYSIS

Summary judgment is appropriate when the pleadings, deposi­tions and affidavits, construed in the light most favorable to the nonmovant, present no issue of material fact and show judgment should be granted as a matter of law.  
The pur­pose of sum­ma­ry judg­ment is not to try a ques­tion of fact, but rather to deter­mine whether one ex­ists.  
Golla v. General Motors Corp.
, 167 Ill. 2d 353, 358, 657 N.E.2d 894, 897 (1995).  The time­liness of a com­plaint is a question of law for the trial court when only one con­clusion can be drawn from the undis­puted facts.  
Nolan v. Johns-Manville Asbes­tos
, 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868-69 (1981).  In cases involving summary judgment, the appel

late court reviews the evidence in the record 
de
 
novo
.  
Truman L. Flatt & Sons Co. v. Schupf
, 271 Ill. App.3d 983, 986, 649 N.E.2d 990, 993 (1995).

The first issue raised on appeal is whether the trial court properly granted summary judgment for the defendants on the ground plaintiff's cause of action was time-barred under the relevant stat­ute of limitations.  

In the present case, the applicable limitations period is found in section 13-202 of the Code of Civil Procedure (735 ILCS 5/13-202 (West 1998)), which mandates an action for damages for personal injury must be com­menced with­in two years after the cause of action ac­crues.  As a general rule, a cause of action for personal inju­ry accrues at the time plaintiff suf­fers injury.  
Hermitage Corp. v. Con­tractors Adjustment Co.
, 166 Ill. 2d 72, 77, 651 N.E.2d 1132, 1135 (1995).  However, to mitigate the harsh con­se­quenc­es of the lit­er­al ap­pli­ca­tion of the limita­tions peri­

od, the judi­ciary created the "dis­covery rule."  
Knox College v. Celotex Corp.
, 88 Ill. 2d 407, 414, 430 N.E.2d 976, 979 (1981).  The "dis­cov­ery rule" post­pones com­mence­ment of the rele­vant stat

ute of limita­tions until the in­jured plaintiff knows or reason­

ably should know she has been injured and her injury may have been wrong­ful­ly caused.  
Jackson Jor­dan, Inc. v. Ley­dig, Voit & Mayer
, 158 Ill. 2d 240, 249, 633 N.E.2d 627, 630-31 (1994).

The defendants argue plaintiff's complaint filed Febru

ary 11, 1998, is untimely because her cause of ac­tion ac­crued at the time of her ini­tial symptoms in Janu­ary 1995 or in the alter­

na­tive when she sought medical help regard­ing her condition in August 1995.  In response, plain­tiff argues the latent nature of her injury triggers the application of the "discovery rule" to delay commencement of the limita­tions period until April 1997, the time at which she was diagnosed with a pulmonary illness.  

Re­gard­less of whether plaintiff's injury was sustained as a re­sult of a single traumatic event or several ostensibly innocuous cir­cum­stances, plaintiff's cause of action accrues when plaintiff knows or rea­sonably should know she has been injured by the wrongful conduct of another.   
VaSalle v. Celotex Corp.
, 161 Ill. App. 3d 808, 810, 515 N.E.2d 684, 686 (1987).  The question of when a party knew or reasonably should have known of both an injury and its wrong­ful cause becomes a question of law for the trial court to deter­mine when only one conclusion can be drawn from the un­disputed facts.  
Witherell v. Weimer
, 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874 (1981); 
­Nolan
, 85 Ill. 2d at 171, 421 N.E.2d at 868-69.  For purposes of the discovery rule, a party has "knowl­edge" an injury was wrongfully caused so as to commence the run­ning of the limi­ta­tions peri­od only when the in­jured per

son pos­sesses suffi­cient infor­ma­tion to alert a rea­son­able per­son of the need to inquire as to whether the cause of inju­ry is ac­

tion­able at law. 
 
Knox College
, 88 Ill. 2d at 416, 430 N.E.2d at 980-81.

Plain­tiff claims until her diagnosis in April 1997 she was both unaware of her inju­ry and unaware of the causal connec

tion between defendants' ac­tions and her injury.  Plaintiff ar

gues she was immediately aware of symp­toms of an illness but not the la­tent pulmonary dis­ease, which was not diagnosed­­ until April 1997.  In support of this argument, plain­tiff cites the case of 
Nolan­
, 85 Ill. 2d at 171, 421 N.E.2d at 868
, which involved an ac­tion for "la­tent" phys­i­cal inju­ries resulting from asbestos exposure.  In this case, the dis­covery rule operated to ­toll the run­ning of the limi­tations period from the time of the initial exposure because the plain­tiffs in ques­tion did not dis­cov­er they suf­fered 
any
 inju­ry until long after the tortious con­duct occurred.

The facts of the present case, however, are inapposite to those of 
Nolan
.  Here, plaintiff knew she suffered 
some
 inju­ry no later than August 1995.  Plaintiff’s complaint makes clear she knew she had occupational asthma and multiple chemical sensitiv

ity around January 1, 1995.  An affidavit filed by plaintiff states she had conversations with Devonshire throughout 1995 and 1996 in which she discussed with Devonshire whether the illnesses being suffered by herself and others were caus­ed by some condi

tion in the building.  In sum, plaintiff expressly admits through her pleadings she was exposed to chemicals as early as December 1994, developed symptoms in January 1995, and raised the question of whether the building was causing her symptoms in August 1995.  

Thus, the pres­ent case does not involve a plain­tiff who failed to dis­cover 
any
 injury but, rather, a plain­tiff who failed to dis­cover the full extent of her inju­ries be­fore the expiration of the statute of limi­tations.  Our supreme court held in 
Golla
, 167 Il.2d at 364, 657 N.E.2d at 900
, that the limita­tions period commenc­es when the plaintiff is injured, rath­er than when plain

tiff realizes the consequences of the inju­ry or the full extent of the inju­ry.  
Hence, the undisputed facts demonstrate the plaintiff knew, no later than Au­gust 1995, she suffered an injury and the inju­ry may have been wrong­fully caused.  Once plaintiff was aware of 
any
 injury and its possible cause, she was aware of her right to sue. 

Plaintiff argues al­though she may have sustained some inju­ry as early as August 1995, she did not know the injury was wrong­ful­ly caused until April 1997.  Relying on 
Witherell
, 85 Ill. 2d at 155, 421 N.E.2d at 874, plain­tiff ar­gues her knowl­edge of the injury sub­stantial­ly pre­ceded knowl­edge of its cause so as to delay or toll the running of the limi­ta­tions peri­od pursuant to the discovery rule.
  We disagree.

As discussed above, the undisputed facts demonstrate plaintiff had conversations with Devonshire throughout 1995 and 1996 in which she questioned whether her illness was caus­ed by some condition in the building.  She also knew other staff mem

bers experienced similar problems and two had been ordered by their doctors not to enter the building.  Further, in August 1995, plaintiff had a lengthy discussion with Dr. Chen as to a possible connection between the building and her illness.

Hence, we find as a matter of law only one conclusion can be drawn from the undisputed facts.  The plaintiff had sufficient knowledge of an injury and that knowledge was gained no later than August 1995 and that knowledge was sufficient to put her on notice her rights had been vio­lat­ed, giving her rea­son­able op­portunity to bring an action within the limitations peri­od.  In so finding, we note the purpose of a limi­ta­tions peri­od is to en­

cour­ag­e claim­ants to in­ves­ti­gate and pursue caus­es of ac­tion and to dis­cour­age delay in the bringing of claims.  See generally 
Sepmeyer v. Holman
, 162 Ill. 2d 249, 262-63, 642 N.E.2d 1242, 1248 (1994).  Accordingly, statutes of limitations rest upon the premise "'the right to be free of stale claims in time comes to prevail over the right to prosecute them.  [Citation.]'"  
Golla
, 167 Ill. 2d at 369, 657 N.E.2d at 902.

Plaintiff's second contention on appeal is defendant Devonshire fraudulently concealed and intentionally misled her as to the wrongful cause of her injury. Plaintiff, relying on 
Huffman v. Gould
, 327 Ill. App. 428, 439, 64 N.E.2d 773, 779 (1945), argues Devonshire’s repeated misrepresentations regarding the building's air quality create a question of fact for the jury as to whether the such fraudulent concealment tolled the statute of limitations or, in the alternative, whether defendants should be equitably estopped from asserting a limitations defense.

To state a 
prima
 
facie
 case of fraudulent concealment, plaintiff must allege acts or misrepresentations affirmatively showing fraudulent concealment of a cause of action that pre

vented the discovery of the cause of action. 
Pratt v. Sears Roe

buck & Co.
, 71 Ill. App. 3d 825, 830, 390 N.E.2d 471, 475 (1979); 
Harvey v. Harris Trust & Savings Bank
, 73 Ill. App. 3d 280, 286-

87, 391 N.E.2d 461, 466 (1979). In the present case, plaintiff's allegations of fraudulent concealment are as follows.  Plaintiff claims Devonshire repeatedly assured her the air quality tests demonstrated the building was not the source of her illness.  Plaintiff further alleges she discovered in 1997, after contact

ing Reed, the representations made by Devonshire regarding the air quality were "not entirely truthful."  We conclude absent any indication plaintiff was prevented from obtaining the results of the environmental tests during the two-year period immediately following her injury, plaintiff fails to state a 
prima
 
facie
 case of fraudulent concealment.

Last, plaintiff argues the trial court improperly granted summary judgment in favor of defendants before plaintiff was allowed to conduct sufficient discovery.  This issue, how

ever, is forfeited for the purposes of appellate review as plain

tiff failed­­­­­ to cite authority in support of her contention.   
Crawford County State Bank v. Grady
, 161 Ill. App. 3d 332, 342-43, 514 N.E.2d 532, 539 (1987); 
Poelker v. Warrensburg-Latham Community Unit School District No. 11
, 251 Ill. App. 3d 270, 275, 621 N.E.2d 940, 945 (1993).

III.  CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Vermilion County is affirmed.

Affirmed.

McCULLOUGH, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I suggest the following issues of fact are present in this case: 

(1) when the remodeling began, whether plaintiff suf

fered only a noncompensable minor discomfort or an injury "suffi

cient to put her on notice that her rights had been violated and [give] her a reasonable opportunity to bring an action" (
Golla
, 167 Ill. 2d at 369, 657 N.E.2d at 902); 

(2) assuming that plaintiff reasonably knew of an in

jury, whether she should reasonably have known that it was wrong

fully caused by the remodeling project, as opposed to something in the air, in the water, in her genetic makeup, or in one of the products used in modern offices (toners, cleansers, air filters, 
et
 
cetera
); and 

(3) whether Devonshire, and perhaps Stradeco, should "be held estopped by their conduct from now urging that plaintiff should have sooner complained against them for a condition they repeatedly assured her she did not have" (
Witherell
, 85 Ill. 2d at 160, 421 N.E.2d at 876).    

"The statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.  
At
 
that
 
point
 the burden is upon the injured person to inquire further as to the existence of a cause of action. [Citations.]  In many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact. [Citation.]  Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court."  (Empha

sis added.)  
Witherell
, 85 Ill. 2d at 156, 421 N.E.2d at 874.  

In 
Witherell
, plaintiff began experiencing problems shortly after she began taking a birth control pill in 1966.  She was hospitalized in 1967, she experienced "excruciating pain," she was told by her mother and other women that the pill could cause blood clots, she was told by Dr. Taubert in 1967 and again in 1972 that she had blood clots, and she was hospitalized a second time in 1972.  Given these "severe difficulties" which plaintiff was having, it was inconceivable to the 
Witherell
 court that a reasonable person would not have realized, at least by the time of the second hospitalization, that she may not have been receiving proper diagnosis and treatment.  
Witherell
, 85 Ill. 2d at 156-57, 421 N.E.2d at 874-75.  

What "severe difficulties" was plaintiff experiencing in the present case?  Plaintiff experienced "respiratory prob

lems" and "skin irritation" in January 1995.  There were "strong, unpleasant odors."  Other employees had these same experiences, discussions were had and some employees "speculated" some condi

tion of the building was a cause of their various ailments.  Slip op. at 2.  In 
Witherell
, before the limitations period was held to begin the plaintiff was hospitalized, suffered excruciating pain, and was explicitly told by a doctor that she had blood clots.  In 
Hutson v. Hartke
, 292 Ill. App. 3d 411, 412, 686 N.E.2d 734, 735 (1997), the plaintiff almost blacked out on the day of the incident, but was able to make it outside without fainting. 
 In the present case, plaintiff did not lose conscious

ness until April 20, 1997, which caused her to seek medical treatment.  How can we say there is no issue of fact in this case?  The test is not whether plaintiff reasonably 
suspects
 an injury and that it was wrongfully caused, but whether plaintiff reasonably 
knows
 of that injury and cause.  The test is not what plaintiff 
could
 have done, but what it was 
reasonable
 for plain

tiff to have done.  The majority's rule will require employees to be hypochondriacs, stirring up trouble in the workplace whenever those employees have a runny nose or a rash.

The fact the 
Witherell
 
plaintiff was misled by the advice she was given by her doctors did not delay the accrual of her cause of action against the manufacturer of the birth control pill, but it did delay accrual against the doctors.  "[C]onsiderations of fundamental fairness require that the defen

dant doctors be held estopped by their conduct from now urging that plaintiff should have sooner complained against them for a condition they repeatedly assured her she did not have."  
Witherell
, 85 Ill. 2d at 160, 421 N.E.2d at 876.  In 
Witherell
, the plaintiff knew of her injury in 1972 even though her treating physicians, potential defendants in the case, told her 
after
 1972 that her problems were muscular.  In this case, the plaintiff did not know that she had been injured when she went to see Dr. Chen, an independent witness, in August 1995.  Unlike 
Witherell
, Dr. Chen was not covering up his own malpractice when he told plain

tiff he was unsure of any connection with her work exposure to her current symptomatology.  Nothing indicates that Dr. Chen was incompetent or mistaken.  
Cf
. 
Witherell
, 85 Ill. 2d at 157, 421 N.E.2d at 875, quoting 
United States v. Kubrick
, 444 U.S. 111, 124, 62 L. Ed. 2d 259, 270, 100 S. Ct. 352, 360 (1979) ("'fails to bring suit because he is incompetently or mistakenly told that he does not have a case'").  

The 
Witherell
 statement that when only one conclusion can be drawn from the undisputed facts the question is for the court, appears to be nothing more than the familiar statement that summary judgment is appropriate absent a genuine issue of a material fact.  See 
In re Estate of Rennick
, 181 Ill. 2d 395, 401, 692 N.E.2d 1150, 1153 (1998).  More than one conclusion can certainly be drawn in this case.  True, a court can enter a sum

mary judgment, even given a genuine issue of material fact, if what is contained in the pleadings and the affidavits would have constituted all of the evidence before the court at trial and, upon such evidence, there would be nothing left to go to a jury and the court would be required to direct a verdict.  
Fooden v. Board of Governors of State Colleges & Universities
, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971).  In this case, it cannot be said that all the evidence that would have been before the court at the time of trial was before the court at the summary judgment stage.  See 
Rotzoll v. Overhead Door Corp.
, 289 Ill. App. 3d 410, 420-25, 681 N.E.2d 156, 163-66 (1997) (Cook, J., dissenting).  The motion for summary judgment here was filed after plaintiff's deposition was taken, before plaintiff had taken any discovery.  Plaintiff, in her response to the motion for summary judgment, asked to be allowed to take discovery before the motion for sum

mary judgment was decided, but that request was denied.  In con

trast, the motion for summary judgment in 
Golla
 was decided 
after discovery had been taken. 
 
Golla
, 167 Ill. 2d at 357-58, 657 N.E.2d at 896-97.  The 
Witherell
 court considered plaintiff's affidavit, her answers to interrogatories, affidavits from the defendant doctors, affidavits from two other doctors, affidavits from a nurse, and plaintiff's rebuttal affidavit.   

During oral argument, Stradeco argued that it should not be charged with any concealment done by Devonshire because Devonshire's actions were not taken on its behalf.  Without dis

covery, however, we do not know the relationship between Stradeco and Devonshire.  The majority sees it as significant that in January 1995 two other employees were ordered by their doctors not to enter the building.  Slip op. at 2.  Why did the doctors enter those orders?  Did the doctors diagnose a specific illness, or did they enter their orders as a precaution?  Did the employ

ees return to the building?  What steps did the doctors require before the employees returned?  Without discovery, we cannot know.        

The unrebutted deposition of plaintiff must be taken as true.  
Rice v. AAA Aerostar, Inc.
, 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998).  Plaintiff testified that Devonshire performed indoor air quality tests at the facility, and she was repeatedly told by Devonshire that no problem existed within the building, and the building was not the cause of her health prob

lems.  The majority avoids this issue with the amazing argument that plaintiff should not have believed Devonshire.  "[A]bsent any indication plaintiff was prevented from obtaining the results of the environmental tests during the two-year period immediately following her injury, plaintiff fails to state a 
prima
 
facie
 case of fraudulent concealment."  Slip op. at 10.  The majority's imposition of extraordinary burdens on plaintiff, and its will

ingness to ignore the misconduct of defendant, is contrary to 
Witherell
.  "'To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. *** [T]his principle *** has frequently been employed to bar inequitable reliance on statutes of limitations.'"  
Witherell
, 85 Ill. 2d at 158, 421 N.E.2d at 875, quoting 
Glus v. Brooklyn Eastern District Terminal
, 359 U.S. 231, 232-33, 3 L. Ed. 2d 770, 772, 79 S. Ct. 760, 762 (1959). 

The majority cites 
Golla
 for the proposition that the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or its full extent.  
Golla
, however, involved a sudden traumatic event, an automobile accident, in which the defect in the automobile seat was apparent.  The 
Golla
 plaintiff contended that her injury was 
de
 
minimis
 when compared with the latent injury she discovered later, but the court noted her immediate injuries were sufficiently severe as to be compensable.  
Golla
, 167 Ill. 2d at 367, 657 N.E.2d at 901.  Her injuries, even if characterized as 
de
 
minimis
, were sufficient to put her on notice that her rights had been violated and gave her a reasonable op

portunity to bring an action within the limitations period.  
Golla
, 167 Ill. 2d at 369, 657 N.E.2d at 902.  That is not true in the present case.  Plaintiff here did not immediately know what had gone wrong as did the plaintiff in 
Golla
 (the automobile seat).  No sudden traumatic event occurred in the present case, but an exposure to workplace conditions over a period of time, as in 
Nolan
, 85 Ill. 2d at 171-72, 421 N.E.2d at 869, where the court held the question when the limitations period commenced was one for the trier of fact.  
The plaintiff in 
Nolan
 knew that he had lung problems in 1957 and that he had pulmonary fibrosis in 1965, but there was a jury question whether he should reasonably have known before 1973 that his condition was caused by exposure to asbestos materials at work.  
Nolan
, 85 Ill. 2d at 171-72, 421 N.E.2d at 869.  There was no immediate compensable injury in the present case, unless we are willing to accept the argument that a plaintiff can recover for a runny nose and an itch.  Those condi

tions were only symptoms, perhaps symptoms of nothing.

I would reverse the summary judgment for plaintiffs and remand for further proceedings.