FIRST DIVISION
MAY 10, 2010

No. 1-09-0868

| | | |
|---|---|---|
| LINDA TANNEHILL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No.  07 L 12319 |
| | ) | |
| AUDREY COSTELLO, | ) | The Honorable |
| | ) | Elizabeth Budzinski, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE PATTI delivered the opinion of the court:

Plaintiff, Linda Tannehill, appeals an order of the circuit court of Cook County granting summary judgment to defendant, Audrey Costello, in plaintiff's personal injury cause of action against her.  Plaintiff sought damages from defendant for injuries she allegedly sustained to her right shoulder in helping defendant walk to her car after defendant experienced a medical emergency and insisted that plaintiff drive her to the hospital, rather than call an ambulance.

The following facts are relevant and taken from the record.  On November 1, 2005, defendant was 67 years old and recuperating at home from recent open heart surgery, which included skin grafts on her legs, when she began experiencing pain and thought that she felt something snap in her leg.  She called plaintiff, who had been her next-door neighbor for approximately 20 years, and asked for assistance.  Plaintiff immediately went next door and defendant told her that she needed to go to the hospital to see her surgeon and asked plaintiff to

drive her there. Plaintiff testified at her discovery deposition that defendant's demeanor was "frantic" and that she "refused for me to call an ambulance." Plaintiff further testified that she "was not comfortable helping [defendant] because I knew that she had *** heart surgery. And I did not know what was wrong with her."

Defendant subsequently asked for her slippers and when plaintiff placed them on her feet, she noticed that defendant's right leg was swollen. Plaintiff testified to the following:

"Q. Was there any conversation at the time you were putting the slippers on her feet?

A. Yes.

Q. What was the conversation?

A. I wanted to call for an ambulance.

Q. Okay.

A. And she was adamant that she did not want to go in an ambulance because she did not want to have to wait at the hospital.

Q. Well, did she say where she wanted you to take her?

A. St. Francis in Blue Island.

Q. To some other department?

A. It was -- She had talked to her surgeon, I guess, and the surgeon had told her to come through the cardiac

2

department.

> Q. Okay. Did you eventually agree to try to drive her
> to the hospital?
>
> A. Yes."

Plaintiff then got her car, parked it in defendant's driveway, and returned to help defendant, who was sitting in the front room in a recliner. Plaintiff offered defendant her right arm because of a prior work-related injury to her left arm. Defendant stood up and held onto plaintiff's right arm, took approximately three to four steps toward the front door, before plaintiff told her that she would not be able to get her into the car. Plaintiff testified that while defendant was taking these steps, the two were arguing because plaintiff still wanted to call an ambulance while defendant insisted that she drive her to the hospital. Defendant testified at her discovery deposition that after she walked these few steps, she felt something burst like a balloon in her leg. After defendant got back into her recliner, plaintiff called 911 and an ambulance transported defendant to the hospital.

Defendant testified that in November 2005, she weighed approximately 167 to 170 pounds and was 4 feet 11 inches tall. She further testified to the following:

> "Q. Why didn't you call an ambulance?
>
> A. Because at the time the doctor they had in the
> emergency room was on drugs or something. They've since
> got rid of him. I had dealings with him in the past once, and
> -- for a nose bleed, and I sat there and I'm not kidding you,

ten hours.

> Q. Had it been your experience when you had gone to the emergency room in the past, that you would deal with that same doctor?
>
> A. No.
>
> Q. And which emergency room are we referencing?
>
> A. St. Francis, Blue Island.
>
> Q. Correct me if I'm wrong. If I'm putting words in your mouth, just tell me.
>
> Would it be fair to say that based on a particular occasion you had in the past with one doctor at St. Francis, you didn't want to chance it going back there and having to wait a real long time?
>
> A. Exactly. I wanted to go to my surgeon's office."

Plaintiff alleged that her right shoulder was injured as a result of physically assisting defendant on November 1, 2005, which necessitated surgery and other treatment. Defendant ultimately moved for summary judgment on the basis that the undisputed facts showed that defendant owed no duty of care to plaintiff.

On January 9, 2009, the trial court granted plaintiff's motion for summary judgment. The trial court found that the injury to plaintiff was not foreseeable under the circumstances and that placing the burden of guarding against such injury on defendant was not practicable.

4

1-09-0868

Consequently, the trial court found that defendant owed no duty to plaintiff. Plaintiff filed a motion for reconsideration on February 5, 2009, which the trial court denied on February 26, 2009, and this timely appeal ensued.

### ANALYSIS

Plaintiff contends that the trial court erred in granting defendant's motion for summary judgment because defendant owed her a duty of care under the rescue doctrine because she was attempting to rescue defendant at the time that she was injured.

We apply a *de novo* standard of review in appeals from summary judgment rulings. Williams v. Covenant Medical Center, 316 Ill. App. 3d 682, 688 (2000). Summary judgment is appropriate when the pleadings, depositions, and admissions, together with any affidavits, show that there is no genuine issue of material fact. 735 ILCS 5/2-1005(c) (West 2008); Gilbert v. Sycamore Municipal Hospital, 156 Ill. 2d 511, 517-18 (1993). Accordingly, the party moving for summary judgment must show, as a matter of law, that it is entitled to judgment. Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis, 229 Ill. App. 3d 680, 683 (1992).

When ruling on a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmovant. Williams, 316 Ill. App. 3d at 687-88. Where a reasonable person could draw divergent inferences from the undisputed facts, summary judgment should be denied. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992); Loyola Academy v. S&S Roof Maintenance, Inc., 146 Ill. 2d 263, 272 (1992). The purpose of summary judgment is not to try a question of fact but to determine whether one exists.

5

1-09-0868

Golla v. General Motors Corp., 167 Ill. 2d 353, 358 (1995). In deciding a motion for summary judgment, inferences may be drawn from the undisputed facts. Loyola Academy, 146 Ill. 2d at 272. "If what is contained in the papers on file would constitute all of the evidence before a court and would be insufficient to go to a jury but would require a court to direct a verdict, summary judgment should be entered." Pyne v. Witmer, 129 Ill. 2d 351, 358 (1989).

The essential elements of a cause of action based on common law negligence may be stated briefly as follows: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. Kirk v. Michael Reese Hospital & Medical Center, 117 Ill. 2d 507, 525 (1987). There can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff. Boyd v. Racine Currency Exchange, Inc., 56 Ill. 2d 95, 97 (1973). When a court considers whether a duty may be imposed on a particular party, the following factors are relevant: (1) the reasonable foreseeability of injury to another; (2) the reasonable likelihood of injury; (3) the magnitude of the burden that guarding against the injury places on the defendant; and (4) the consequences of placing that burden on the defendant. Rexroad v. City of Springfield, 207 Ill. 2d 33, 44 (2003). Whether a duty of care exists is a question of law to be determined by the court. City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 391 (2004).

The rescue doctrine, as relied upon by plaintiff in this case, arises when a plaintiff brings a negligence action against a defendant whose negligence has placed a third party in a position of peril. Williams v. Foster, 281 Ill. App. 3d 203, 207 (1996). "If the plaintiff is injured in the attempted rescue, he is allowed to negate a presumption that (1) his intentional act of rescue is

6

the superseding cause of his injuries, thereby allowing him to prove that defendant's negligence is the proximate cause of his injuries, and (2) he is guilty of contributory negligence by the mere act of voluntarily assuming a known risk of harm unless he acts rashly or recklessly." Strickland v. Kotecki, 392 Ill. App. 3d 1099, 1102 (2009). "Essentially, the doctrine provides that it is always foreseeable that someone may attempt to rescue a person who has been placed in a dangerous position and that the rescuer may incur injuries in doing so. Therefore, if the defendant is negligent towards the rescuee, he is also negligent toward the rescuer." Williams, 281 Ill. App. 3d at 207-08. In Williams, this court ultimately concluded that the evidence was for a jury to decide whether the manufacturer and installer of a home's hot water heater could be found liable under the rescue doctrine for injuries sustained by the plaintiff when attempting to rescue a family from a burning home which was allegedly caused by the home's hot water heater and/or its placement. Williams, 281 Ill. App. 3d at 208-09.

Recently, in Strickland the Third District considered as a matter of first impression in Illinois whether the rescue doctrine permits a rescuer to recover from a rescued party if the rescuer is injured in the course of the rescue. Strickland 392 Ill. App. 3d at 1102. In Strickland, the defendant could not find her husband and she feared that he was going to attempt suicide. Strickland, 392 Ill. App. 3d at 1100. Consequently, she called her sister and requested that she and her husband help her find him. Strickland, 392 Ill. App. 3d at 1100. The defendant's husband was ultimately located in a vehicle in a locked, fenced-in property with a hose running from the exhaust pipe to the passenger window. Strickland, 392 Ill. App. 3d at 1100. When the defendant's brother-in-law jumped over the fence to rescue her husband, he injured his right foot,

and he and the defendant's sister subsequently brought a negligence action against the husband and wife defendants to recover damages. Strickland, 392 Ill. App. 3d at 1100.

The Strickland court agreed with the overwhelming authority in other states that allows a rescuer to recover from a defendant who places himself in danger and the rescuer is injured in the course of the rescue. Strickland, 392 Ill. App. 3d at 1104. The court then found that the allegations in the plaintiffs' complaint were sufficient to establish that it was foreseeable, if not likely, that someone would attempt to rescue the defendant and become injured in the process. Strickland, 392 Ill. App. 3d at 1104. Therefore, under the rescue doctrine, the defendant husband owed a duty of care to his rescuer. Strickland, 392 Ill. App. 3d at 1105. The court found, however, that the allegation that the defendant wife was liable for injuries to her brother-in-law merely because she " 'requested and/or demanded ' " that he assist her husband failed to establish, as a matter of law, any duty on her part. Strickland, 392 Ill. App. 3d at 1101.

Turning to the instant case, there is no need for us to address whether we agree with the Strickland court that the rescue doctrine may be asserted by a rescuer to recover damages from a defendant who places herself in danger because, even if it may, it would not support plaintiff's cause of action here. Based upon the undisputed facts, unlike the defendant husband in Strickland, defendant did not place herself in a dangerous situation on November 1, 2005, where she knew others might or could attempt to rescue her. Defendant simply asked or insisted that plaintiff drive her to the hospital, rather than call an ambulance, after she experienced a health emergency in her home which led to plaintiff helping defendant walk toward the door. As with

8

the defendant wife in <u>Strickland</u>, the claim that defendant was liable for plaintiff's alleged injuries merely because she requested and/or demanded that plaintiff assist her, and plaintiff agreed to do so, failed to establish, as a matter of law, any duty on defendant's part  We also agree with the trial court that under the circumstances of this case the injury to plaintiff was not foreseeable and that placing the burden of guarding against such injury on defendant was not practicable.  For the foregoing reasons, the trial court properly granted summary judgment in defendant's favor.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HALL, P.J., and LAMPKIN, J., concur.